2007 UT App 131

**GLFP, LTD., Plaintiff and Appellant,**

v.

**CL MANAGEMENT, LTD., a Utah limited partnership; Clark Leaming Properties, a Utah limited partnership; and Howard S. Clark and H. Scott Clark, individuals, Defendants and Appellees.**

No. 20060440–CA.

Court of Appeals of Utah.

April 19, 2007.

Rehearing Denied July 9, 2007.

Brent E. Johnson and Katherine Norman, Salt Lake City, and A. Bruce Jones, Denver, Colorado, for Appellant.

Jeffery S. Williams, Salt Lake City, for Appellees.

Before Judges BILLINGS, DAVIS, and McHUGH.

1. GLFP was a limited partnership at the time it filed its complaint in this case. Since that time, GLFP converted to a limited liability company. We continue to refer to GLFP as a limited partnership.

## OPINION

McHUGH, Judge:

¶ 1 GLFP Ltd., a limited partnership, appeals the trial court's order granting summary judgment in favor of CL Management, Ltd., Clark Leaming Properties, Howard S. Clark, and H. Scott Clark. GLFP also appeals the trial court's refusal to allow GLFP to amend its complaint. We affirm in part and reverse in part.

## BACKGROUND

¶ 2 Merline Leaming and Howard Clark are brother and sister. Leaming is the majority owner of GLFP (the Gerald Leaming Family Partnership).[1] Clark is the majority owner of the Howard Clark Family Partnership. Together, GLFP and the Howard Clark Family Partnership are also limited partners in another business entity called Clark Leaming Properties (CL Properties). As limited partners, GLFP and the Howard Clark Family Partnership each own 45% of CL Properties. The remaining 10% of CL Properties is owned by its general manager, CL Management. CL Management is controlled by Clark and another corporate entity called MB Management Inc.[2] CL Management's primary business purpose is to manage real estate holdings, including CL Properties's real estate holdings in Arizona and California.

¶ 3 Starting in 1992, family relations between the Leamings and the Clarks began to erode due to disputes with respect to their joint business interests. In particular, the Leamings became unhappy with the management services that CL Management provided to CL Properties. In February 2005, GLFP filed a complaint against Clark and his son H. Scott Clark, CL Management, and CL Properties (collectively, Defendants) alleging that (1) Defendants caused CL Management to charge CL Properties excessive management fees, (2) Defendants caused CL Management to use those fees to manage properties not owned by CL Properties, (3)

2. MB Management Inc. is partially owned by Howard Clark's wife and is not a party to this litigation.

Defendants caused CL Management to mismanage CL Properties's real estate holdings, and (4) Defendants CL Management and the Clarks breached a fiduciary duty to GLFP. GLFP also sought judicial dissolution of CL Properties and CL Management and an accounting.

¶ 4 Defendants filed a motion for summary judgment claiming that GLFP had improperly asserted derivative claims directly, without having first made demand on CL Properties, contrary to rule 23.1 of the Utah Rules of Civil Procedure. The trial court granted Defendants' request, finding that all of GLFP's claims—including its request for judicial dissolution and an accounting—were based on derivative theories of recovery and, therefore, could not be brought directly without GLFP first making demand on CL Properties. The trial court rejected GLFP's argument that it was exempt from the demand requirement. The trial court also denied GLFP's request to amend its complaint to restate the causes of action as derivative claims, finding the motion to amend "moot." GLFP now appeals.

## ISSUES AND STANDARDS OF REVIEW

¶ 5 GLFP argues that the trial court erred by granting Defendant's motion for summary judgment. We affirm summary judgment only when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Utah R. Civ. P. 56(c). "We grant the trial court's legal conclusions no deference, reviewing them for correctness. Furthermore, in reviewing a grant of summary judgment, we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Arnold Indus., Inc. v. Love*, 2002 UT 133, ¶ 11, 63 P.3d 721 (citation and quotations omitted). GLFP also argues that the trial court erred in refusing to allow it to amend its complaint. We review a trial court's decision to grant or deny a motion to amend a complaint for abuse of discretion. *See R & R Energies v. Mother Earth Indus., Inc.*, 936 P.2d 1068, 1080 (Utah 1997).

## ANALYSIS

¶ 6 GLFP asserts that the trial court erred when it (1) determined that all of GLFP's claims were derivative claims belonging to CL Properties; (2) refused to invoke an exception allowing limited partners to pursue derivative claims directly; and (3) refused to allow GLFP to amend its complaint. We affirm the trial court's determination that GLFP's claims concerning fees, mismanagement, and fiduciary breach are each derivative and therefore belong to CL Properties, but find that the trial court erred in refusing to allow GLFP to seek judicial dissolution and dissolution-related accounting in accordance with Utah Code sections 48-2a-802 and 48-1-40. *See* Utah Code Ann. §§ 48-2a-802 (2002), 48-1-40 (2002). We also affirm the trial court's refusal to find that, under the close corporation exception, GLFP is exempt from making demand prior to bringing a derivative claim. Finally, we remand to the trial court for reconsideration of GLFP's motion to amend its complaint.

### I. Derivative Claims

¶ 7 GLFP claims that as a result of misconduct on the part of Defendants, GLFP received less than its fair share of distributions from CL Properties. GLFP asserts that it suffered direct and distinct harm—separate from any harm suffered by CL Properties—and that its complaint therefore properly alleges a direct action. We disagree.

¶ 8 This court looks to principles of corporate law to distinguish derivative actions from individual actions in the context of limited partnerships. *See Arndt v. First Interstate Bank of Utah*, 1999 UT 91, ¶ 24, 991 P.2d 584 (concluding that "it is appropriate to apply corporate principles concerning derivative actions to limited partnerships"). Utah law defines derivative suits as

those which seek to enforce any right which belongs to the corporation. *Actions alleging mismanagement, breach of fiduciary duties, and appropriation or waste of corporate opportunities and assets generally belong to the corporation, and therefore, a shareholder must bring such actions on its behalf.* Moreover, even

though wrongdoing or fraud of corporate officers may indirectly injure shareholders, shareholders generally cannot sue directly for those injuries.

*Aurora Credit Servs., Inc. v. Liberty W. Dev., Inc.,* 970 P.2d 1273, 1280 (Utah 1998) (emphasis added) (citations and quotations omitted); *see also Warner v. DMG Color, Inc.,* 2000 UT 102, ¶ 12, 20 P.3d 868 ("Claims of mismanagement, breach of fiduciary duties, and appropriation or waste of corporate opportunities are claims that the corporation has been injured. Accordingly, the cause of action belongs to the corporation and shareholders may sue only on its behalf."). In contrast, a direct claim is one where " 'the injury is one to the plaintiff as a stockholder . . ., and not to the corporation, as where the action is based on contract to which he is a party, or on a right belonging severally to him, or on a fraud affecting him directly.' " *See Aurora Credit,* 970 P.2d at 1280 (quoting *Richardson v. Arizona Fuels Corp.,* 614 P.2d 636, 639 (Utah 1980)).

■ ¶ 9 Here, GLFP's claims of fiduciary breach, excessive fees, commingling of fees, and mismanagement of property each fall squarely in the category of claims that Utah law recognizes as classically derivative. *See, e.g., Richardson,* 614 P.2d at 639 (noting that fiduciary breach claims are derivative because, while "directors and officers [of a corporation] stand in a like relation to the stockholders of the corporation, . . . that relation is to the stockholders *collectively* " and therefore the claim for relief belongs to the corporation (citation omitted)); *see also id.* at 640 ("The rule in Utah is that mismanagement of the corporation gives rise to a cause of action in the corporation, even if the mismanagement results in damage to stockholders by depreciating the value of the corporation's stock.").

¶ 10 GLFP's sole argument in support of asserting its claims directly instead of derivatively is that GLFP suffered a harm distinct from any harm CL Properties suffered when it received reduced distributions from CL Properties. In essence, GLFP argues that Defendants' conduct financially injured CL Properties in such a way that CL Properties cannot make adequate distributions to

GLFP. In other words, GLFP was injured because CL Properties was injured. Because GLFP's injury is necessarily linked to the financial health of CL Properties, however, GLFP's claim lacks "the distinctive qualities necessary to remove [it] from the category of derivative claims." *Arndt,* 1999 UT 91 at ¶ 22, 991 P.2d 584 (holding that losses suffered by plaintiffs attempting to bring a class action suit were derivative because they were based on the decreased value of the partnership, and therefore plaintiffs suffered an "indirect and contingent" loss); *see also Golden Tee, Inc. v. Venture Golf Sch., Inc.,* 333 Ark. 253, 969 S.W.2d 625, 630 (Ark.1998) (holding that claims were derivative because the "primary injury" alleged by the stockholders was, in fact, only for "indirect damages by way of injury to the partnership"); *Litman v. Prudential–Bache Props., Inc.,* 611 A.2d 12, 16 (Del.Ch.1992) (holding that allegations that a general partner's misconduct directly injured a limited partner's distribution rights is a derivative claim because it is the equivalent of alleging that a general partner injured the partnership); *Northern Trust Co. v. VIII S. Mich. Assocs.,* 276 Ill. App.3d 355, 212 Ill.Dec. 750, 657 N.E.2d 1095, 1101 (1995) ("Limited partners do not have a cause of action for damages to their interest in a limited partnership.").

¶ 11 Accordingly, the trial court correctly identified GLFP's claims for breach of fiduciary duty, excessive fees, commingling of fees, and mismanagement as derivative claims belonging to the corporation or limited partnership.

## II. Dissolution and Accounting Claims

¶ 12 GLFP next argues that the trial court erred in granting Defendants summary judgment on GLFP's judicial dissolution and accounting claims. The trial court held that these claims were so squarely rooted in derivative theories of recovery that "they lack[ed] any basis." We disagree. Utah's Revised Uniform Limited Partnership Act (the Act), *see* Utah Code Ann. §§ 48–2a–101 to –1107 (2002 & Supp.2006), provides that limited partners may seek judicial dissolution "whenever it is not reasonably practicable to carry on the business in conformity with the

partnership agreement or for failure to comply with the requirements of [the Act,]" *see id.* § 48–2a–802. That section states:

> On application by or for a partner or the director of the division, a district court having competent jurisdiction may decree dissolution of the limited partnership whenever it is not reasonably practicable to carry on the business in conformity with the partnership agreement or for failure to comply with the requirements of this chapter.

*Id.*

¶ 13 In its complaint, GLFP sought judicial dissolution and an accounting based on claims separate from the derivative claims addressed above. GLFP specifically alleged that Defendants failed to allow GLFP access to partnership records or information in violation of section 305 of the Act, and that Defendants failed to share profits, losses, and distributions of the limited partnership with GLFP in violation of sections 503 and 504 of the Act. *See id.* §§ 48–2a–503 to –504 (2002). These allegations set forth a sufficient basis—separate and distinct from GLFP's derivative claims—for seeking judicial dissolution. The trial court therefore erred in refusing to allow GLFP to pursue these claims.

¶ 14 GLFP also claims that "[a]s part of the dissolution of the Defendant partnerships, Plaintiff is entitled to an accounting." Defendants argue, and the trial court agreed, that the claim for an accounting is also derivative and belongs to the partnership. In support of their position, Defendants cite *Richardson v. Arizona Fuels Corp.,* 614 P.2d 636 (Utah 1980), for the proposition that a claim for an accounting is always derivative. We believe Defendants have misapprehended the scope of the *Richardson* decision. In *Richardson,* the Utah Supreme Court held that the plaintiffs had improperly alleged claims that belonged to the corporation, including breach of fiduciary duty and mismanagement. *See id.* at 639–40. The *Richardson* court also found that, as pled in the complaint, the accounting claim was derivative, stating:

> The eleventh cause of action alleges the possibility of other conversions of [the cor-

poration's assets] and alleges that the defendants should be required to account to the stockholders for all of the assets of [the corporation] and disgorge themselves of any assets so converted. This claim also clearly belongs to the corporation.

*Id.* at 640. The claim for an accounting in *Richardson* was asserted as part of a cause of action seeking damages for conversion. *See id.* Consequently, that request for an accounting was inextricably intertwined with the damages claim and properly belonged to the corporation.

¶ 15 Here, GLFP seeks an accounting "as part of the dissolution" and not in connection with a claim for damages under a classically derivative theory. Indeed, the Utah Legislature has created a statutory right to an accounting for any partner at the date of dissolution. *See* Utah Code Ann. § 48–1–40 (2002) ("The right to an account of his interest shall accrue to any partner . . . at the date of dissolution in the absence of any agreement to the contrary."). Thus, although we agree with the trial court that a claim for an accounting that is part and parcel of a derivative claim is likewise derivative, we hold that GLFP is entitled to pursue a direct claim for an accounting in connection with its cause of action for dissolution. If GLFP proves its entitlement to dissolution, Utah Code section 48–1–40 gives it a corresponding right for an accounting at the time of dissolution absent an agreement to the contrary. *See id.*

### III. The Close Corporation Exception

¶ 16 GLFP next argues that, even if some of its claims are derivative, the trial court should have invoked an exception allowing limited partners to pursue derivative claims directly.

¶ 17 Under principles of corporate law, "the right to seek the redress of corporate grievances belongs to the corporation to be exercised by corporate management." *Dansie v. City of Herriman,* 2006 UT 23, ¶ 26, 134 P.3d 1139. Rule 23.1 of the Utah Rules of Civil Procedure provides an exception to this general rule by allowing members or shareholders to bring a derivative action if

certain conditions are met. *See* Utah R. Civ. P. 23.1; *Dansie*, 2006 UT 23 at ¶ 26, 134 P.3d 1139. To protect the right of the corporation to govern its own affairs, plaintiffs bringing a derivative claim must first make demand on the corporation "to have an action brought and prosecuted in the name of the corporation to redress the grievances complained of[.]" *Dansie*, 2006 UT 23 at ¶ 21, 134 P.3d 1139 (quotations omitted). Individual shareholders may bring claims directly against the corporation without first making demand only in very limited circumstances, and only when complying with strict pleading requirements. *See* Utah R. Civ. P. 23.1 ("The complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for his failure to obtain the action or for not making the effort."); *see also Dansie*, 2006 UT 23 at ¶ 27, 134 P.3d 1139 ("In fact, it will generally require less effort for the plaintiff to make a demand on the corporation than to satisfy rule 23.1's stringent pleading requirements.").

¶ 18 Utah's Revised Uniform Limited Partnership Act similarly provides that limited partners may bring derivative claims directly only if:

> [G]eneral partners with authority to do so have refused to bring the action and the general partners' decision not to sue constitutes an abuse of discretion or involves a conflict of interest that prevents an unprejudiced exercise of judgment, or if an effort to cause those general partners to bring the action is not likely to succeed.

Utah Code Ann. § 48–2a–1001 (2002). Like rule 23.1, the Act further requires that a limited partner's complaint must "set forth with particularity the effort of the plaintiff to secure initiation of the action by a general partner or the reasons for not making the effort." *Compare* Utah R. Civ. P. 23.1, *with* Utah Code Ann. § 48–2a–1003 (2002).

¶ 19 Before bringing direct claims against Defendants, GLFP did not make demand upon CL Properties, nor did its pleadings allege "with particularity the effort of the plaintiff to secure initiation of the action by a general partner or the reasons for not making the effort." Utah Code Ann. § 48–2a–1003. Instead, GLFP seeks to file its claims pursuant to an exception whereby shareholders in a closely held corporation may be permitted to bring derivative claims directly.

¶ 20 In *Aurora Credit Services, Inc. v. Liberty West Development Inc.*, 970 P.2d 1273 (Utah 1998), the Utah Supreme Court recognized a "growing trend" where a court may exempt a shareholder in a closely held corporation from having to comply with the strict requirements of derivative actions and instead bring a claim directly if it finds that to do so will not:

> (i) unfairly expose the corporation or defendants to a multiplicity of actions, (ii) materially prejudice the interests of creditors of the corporation, or (iii) interfere with a fair distribution of the recovery among all interested persons.

*Id.* at 1280. And later, in *Arndt v. First Interstate Bank of Utah*, 1999 UT 91, 991 P.2d 584, the Utah Supreme Court revisited the *Aurora Credit* analysis in the context of limited partnerships. *See id.* at ¶ 22. In applying the *Aurora Credit* analysis, however, the *Arndt* court merged the concepts of the close corporation exception with the direct injury requirement, finding that the *Aurora Credit* analysis did not remove the claims from the category of derivative claims because the plaintiffs' injuries stemmed only from their non-particularized interests in the subject partnerships. *See id.* Thus, in Utah, the scope of the close corporation exception is unclear, as is whether a partner may bring classically derivative claims under the exception absent a particularized injury.[3]

3. In *Arndt v. First Interstate Bank of Utah*, 1999 UT 91, 991 P.2d 584, the Utah Supreme Court noted that "[t]he injury alleged in *Aurora Credit [Services, Inc. v. Liberty West Development Inc.*, 970 P.2d 1273 (Utah 1998),] was suffered uniquely by Aurora Credit and therefore was much more direct than is a typical derivative claim." *Arndt*, 1999 UT 91 at ¶ 21, 991 P.2d 584. Although *Aurora Credit* indicates that the subject corporation was formed by four individuals, only two shareholders appear to own stock in the company. *See Aurora Credit*, 970 P.2d at 1275; *see also* Peter H. Donaldson, Breathing Life Into *Aurora Credit Services, Inc. v. Liberty*

*See Dansie,* 2006 UT 23 at ¶ 16, 134 P.3d 1139 ("We have not had the opportunity to fully delineate the bounds of the [*Aurora Credit*] exception in Utah."); *cf.* Utah Code Ann. § 48–2a–1001 (failing to exempt limited partners from the requirement that the general partners must have refused to pursue the action before the limited partner may proceed directly). Indeed, since its decision in *Aurora Credit,* the Utah Supreme Court has not sanctioned this exception, and has recently suggested that the trend to invoke it may have "stopp[ed] in its tracks" or "retreated," and that it has been "severely limited or rejected" in some jurisdictions.[4] *Dansie,* 2006 UT 23 at ¶ 16, 134 P.3d 1139; *see also Warner v. DMG Color, Inc.,* 2000 UT 102, ¶ 19, 20 P.3d 868 (refusing to apply the *Aurora Credit* close corporation exception where derivative claims belong to the bankruptcy estate); *Arndt,* 1999 UT 91 at ¶ 22, 991 P.2d 584 (purporting to apply the *Aurora Credit* close corporation exception to limited partnerships but also requiring a unique injury to plaintiff separate from losses contingent to those of the partnership).

■ ¶ 21 Assuming without deciding that the close corporation exception is still viable in Utah, and assuming without deciding that the exception does, in fact, apply in the context of limited partnerships, we conclude that the trial court did not abuse its broad discretion in refusing to invoke it here.

¶ 22 The close corporation exception to the distinction between direct and derivative actions was adopted as a compromise position by the American Law Institute (ALI) in 1992. *See* American Law Institute, Principles of Corporate Governance: Analysis and Recommendations § 7.01 (1994) (ALI, Principles of Corporate Governance); *see also* Peter H. Donaldson, Breathing Life Into *Aurora Credit Services, Inc. v. Liberty West Development, Inc:* Utah's Close Corporation Exception to the Derivative Lawsuit Requirement and Case for Strong Fiduciary Duties in Close Corporations, 2002 Utah L.Rev. 519, 527–28 (Donaldson, Breathing Life Into *Aurora Credit* ). Section 7.01 of the ALI Principles of Corporate Governance recommends a rule whereby the trial court, in its discretion, may allow a shareholder in a closely held corporation to proceed directly with classically derivative claims if the court finds that to do so will not "(i) unfairly expose the corporation or the defendants to a multiplicity of actions, (ii) materially prejudice the interests of creditors of the corporation, or (iii) interfere with a fair distribution of the recovery among all interested persons." ALI, Principles of Corporate Governance § 7.01(d). The ALI position, which was adopted by the Utah Supreme Court in *Aurora Credit, see* 970 P.2d at 1280, leaves ultimate discretion in applying the exception with the trial court. *See* ALI, Principles of Corporate Governance § 7.01(d) cmt. e.

West Development Inc.: Utah's Close Corporation Exception to the Derivative Lawsuit Requirement and Case for Strong Fiduciary Duties in Close Corporations, 2002 Utah L.Rev. 519, 538 ("*Aurora Credit* involved a dispute between two lone shareholders....") (Donaldson, Breathing Life Into *Aurora Credit* ). Thus, *Aurora Credit*'s injury was unique because there were no other shareholders that could have been injured by the wrongful acts of the controlling shareholder. The *Arndt* Court seems to have limited the close corporation exception to facts like *Aurora Credit* where the unusually small allocation of ownership in the company results in a specialized injury to the plaintiff.

4. Mississippi, Nebraska, South Dakota, Alaska, and Arkansas each refuse to apply the close corporation exception, recognizing instead that an individual shareholder can bring a direct action only when a stockholder "shows a violation of duty owed directly to him" or when an injury is "peculiar" to him. *See, e.g., Crocker v. Federal*

*Deposit Ins. Corp.,* 826 F.2d 347, 349 & n. 3 (5th Cir.1987) (applying Mississippi law and noting that a stockholder may sue directly " 'in a case where the stockholder shows a violation of duty owed directly to him' " (quoting *Bruno v. Southeastern Servs.,* 385 So.2d 620, 622 (Miss.1980))); *Landstrom v. Shaver,* 561 N.W.2d 1 (S.D. 1997)("[F]or a shareholder to maintain an individual action, the shareholder must establish a 'special injury' which is separate and distinct from that of other shareholders."); *Meyerson v. Coopers & Lybrand,* 233 Neb. 758, 448 N.W.2d 129, 134 (1989) (requiring shareholders to allege a "separate and distinct injury" if bringing an individual action); Donaldson, Breathing Life Into *Aurora Services,* 2002 Utah L. Rev at 531 (discussing states that have adopted special injury requirement); *cf., e.g., Hikita v. Nichiro Gyogyo Kaisha, Ltd.,* 713 P.2d 1197, 1200 (Alaska 1986) (finding that shareholders may assert direct claims for breach of contract to which he is a party); *Hames v. Cravens,* 332 Ark. 437, 966 S.W.2d 244, 247 (1998) (same).

Thus, even if the three prongs of the test are met, the trial court may deny the shareholder the right to proceed directly. *See Aurora Credit,* 970 P.2d at 1280 ("We therefore hold that a court *may* allow a minority shareholder in a closely held corporation to proceed directly against corporate officers." (emphasis added)); *see also Mynatt v. Collis,* 274 Kan. 850, 57 P.3d 513, 530 (2002) ("Even if all three prongs of the test were met, the district court, in its equitable power and discretion, could deny [shareholders] the ability to proceed directly.");[5] ALI, Principles of Corporate Governance, 7.01(d) cmt. e (acknowledging that trial court has discretion in determining if minority shareholder should be allowed to proceed directly); 12B Fletcher Cyclopedia of the Law of Private Corporations § 5911.50 (Perm. Ed.2000) (same); Donaldson, Breathing Life Into *Aurora Credit,* 2002 Utah L.Rev. at 527–28 (same).

¶ 23 Here, the trial court found that "the evidence in the record simply does not support such an exception" or otherwise show that the three criterion adopted in *Aurora Credit, see* 970 P.2d at 1280, listed above, are satisfied. Parties that could potentially be affected by GLFP's direct suit against Defendants are not before the court. MB Management Inc., is a general partner and owner of CL Management, but is not a party to this litigation. The GAL Marital Deduction Trust, a limited partner of CL Management, and the Howard Clark Family Partnership, a limited partner of CL Properties, are also absent from this litigation. The trial court was within its discretion in concluding that to allow GLFP to proceed individually could subject Defendants to inconsistent liability to these excluded parties, and could "spawn multiple litigation among the partnership, the individual partners, and [D]efendants." *Kemp v. Murray,* 680 P.2d 758, 761 (Utah 1984).

¶ 24 While GLFP claims that each of these entities are owned by members of the Clark and Leaming families "such that adding them does not bring any new interests to the case," we disagree. Each of the above listed partnerships are separate business entities with distinct legal rights and obligations. We cannot ignore the separate status of these entities merely because their owners are related. *See NLRB v. Greater Kan. City Roofing,* 2 F.3d 1047, 1051 (10th Cir.1993) ("Generally, a corporation is a legal entity, ... and such a legal entity may not be disregarded ...." (quotations omitted)); *see also* 18 Am.Jur.2d *Corporations* § 44 (2006) (noting that a corporation is "a distinct legal entity, with legal rights, obligations, powers and privileges different from those of the natural individuals who created it, own it, or whom it employs[ and i]n no legal sense can the business of a corporation be said to be that of its individual shareholders").

¶ 25 We therefore conclude that the trial court did not abuse its discretion in failing to invoke the close corporation exception, even if such an exception is available in Utah to exempt GLFP from the requirements of the Utah Partnership Act. *See* Utah Code Ann. § 48–2a–1001.

## IV. Motion to Amend

¶ 26 GLFP's final argument is that it should be allowed to amend its complaint to either comply with the demand requirements set forth in Utah Code section 48–2a–1003 and rule 23.1 of the Rules of Civil Procedure or to allege facts supporting its assertion that such efforts would be futile. We will not disturb a trial courts ruling on a motion to amend absent a clear abuse of discretion. *See Savage v. Utah Youth Village,* 2004 UT 102, ¶ 9, 104 P.3d 1242. The discretion granted a trial court to deny a motion to amend, however, must be tempered with the mandate of rule 15 of the Utah Rules of Civil Procedure that "leave [to amend] shall be freely given when justice so requires." Utah R. Civ. P. 15(a).

---

5. Although few courts have addressed the issue, it appears that the party seeking to rely upon the close corporation exception has the burden to come forward with evidence negating the three prongs identified in section 7.01(d) of ALI's Principles of Corporate Governance. *See Brown v. Mailman,* No. 95–2181–JWL, 1996 WL 42229, at *3, 1996 U.S. Dist. LEXIS 1153, at *10 (D.Kan. Jan. 19, 1996) ("[E]ven if the close corporation exception were applied to this case, the plaintiffs have made no showing to satisfy the three threshold requirements ....").

¶ 27 In *Aurora Credit Services, Inc. v. Liberty West Development Inc.*, 970 P.2d 1273 (Utah 1998), the Utah Supreme Court cited favorably the United States Supreme Court's caution that " 'outright refusal to grant the leave [to amend] without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit' " of the rules of civil procedure. *Id.* at 1281 (quoting *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)). In the case before us, the trial court ruled that the motion to amend was "moot." Although neither of the parties were able to enlighten this court as to the rationale behind that conclusion, we think it likely that the trial court considered the motion in the context of its summary judgment disposing of all the claims asserted by GLFP. As discussed above, we hold that GLFP may proceed with its dissolution action and, if it proves it is entitled to dissolution, is also entitled to an accounting. Therefore, the basis of the trial court's conclusion that the motion to amend is moot may no longer be valid. We therefore reverse the denial of the motion to amend with instructions for the trial court to reconsider it in the context of the remaining claims and the specific allegations of any draft amended complaint submitted by GLFP as required by rule 15. *See* Utah R. Civ. P. 15; *see also Holmes Dev. L.L.C. v. Cook*, 2002 UT 38, ¶ 57, 48 P.3d 895 ("[A] motion for leave to amend must be accompanied by a memorandum of points and authorities in support and by a proposed amended complaint." (citation omitted)); *see also Coroles v. Sabey*, 2003 UT App 339, ¶ 44, 79 P.3d 974.[6]

¶ 28 "In deciding on a motion to amend, the trial court should primarily consider whether granting the motion would subject the opposing party to unavoidable prejudice 'by having an issue adjudicated for which he had not had time to prepare.' " *Aurora Credit*, 970 P.2d at 1282 (quoting *Bekins Bar v. Ranch v. Huth*, 664 P.2d 455, 464 (Utah 1983)). In this case, Defendants brought their motion for summary judgment only five months after the complaint was filed and after limited discovery. Likewise, the claims asserted are the same and only the right to bring them directly is at issue. "The trial court must ultimately assess all of the factors on remand to determine if leave to amend is appropriate." *Id.*

¶ 29 Any proposed amended complaint filed by GLFP must either expressly allege that demand was made on the partnership or plead with particularity why such demand would be futile. *See* Utah Code Ann. § 48–2a–1003 (requiring a derivative action to "set forth with particularity the effort of the plaintiff to secure initiation of the action by a general partner or the reasons for not making the effort"). We note, however, that GLFP bears a significant burden if it seeks to proceed directly on the derivative claims without first making demand on CL Properties.[7] To be exempted from the demand requirement, "the circumstances must be such that such a demand would be futile and unavailing." *Dansie v. City of Herriman*, 2006 UT 23, ¶ 24, 134 P.3d 1139 (alteration and quotations omitted). Accordingly, the trial court "must examine first whether Plaintiffs did allege with particularity why demand would be futile and whether that allegation establishes that demand would have been futile and unavailing." *Id.* In doing so, the court "must exercise considerable caution before using futility to

---

6. In *Holmes Development L.L.C. v. Cook*, 2002 UT 38, 48 P.3d 895, the Utah Supreme Court interpreted rule 7(b)(1) of the Utah Rules of Civil Procedure in conjunction with the Utah Rules of Judicial Administration to require that a motion to amend a complaint be accompanied by a proposed amended complaint. *See id.* at ¶ 57; *see also Coroles v. Sabey*, 2003 UT App 339, ¶ 44, 79 P.3d 974. Although rule 7(b)(1) was amended in 2003, the same exact language relied upon by the Supreme Court in *Holmes Development* remains in current rule 7(b). *Compare* Utah R. Civ. P. 7(b)(1) (2002), *with* Utah R. Civ. P. 7(b)

(2006). Accordingly, we continue to interpret rule 7 as requiring a plaintiff to attach a proposed amended complaint to a motion to amend.

7. "[B]ecause this ... issue is likely to be raised again upon remand, we ... briefly address it here[.]" *State v. Torres–Garcia*, 2006 UT App 45, ¶ 23 n. 4, 131 P.3d 292; *see also State v. Cloud*, 722 P.2d 750, 755 (Utah 1986) (noting that it is appropriate, in the interest of judicial economy, to comment on "other contentions on appeal that will arise again upon retrial").

relieve a shareholder of his obligation to make the statutorily-required demand." *Id.* at ¶ 26.

¶ 30 The Utah Supreme Court recognizes only two instances in which the futility exception will be met: (1) "demand would be futile if the corporation had specifically and explicitly stated that it would not pursue the claims brought in the derivative action[;]" and, (2) demand can be excused if making a demand would be "substantively detrimental" in that it could "permit[ ] the alleged perpetrator to cover up his misdeeds or to cause further harm to the corporation because he had been alerted that his unlawful conduct had been uncovered." *Id.* at ¶ 28. In evaluating any amended complaint based on the futility exception, the trial court should consider whether GLFP has alleged facts which support at least one of these narrow instances in which the exception may be applied.

## CONCLUSION

¶ 31 The trial court correctly determined that GLFP improperly asserted derivative claims directly when it alleged that Defendants breached their fiduciary duty, charged CL Properties excessive fees, commingled those fees to manage other properties, and mismanaged CL Properties's real estate holdings. Therefore summary judgment was proper on these claims. Because GLFP sought dissolution based on Defendant's alleged refusal to comply with the Revised Uniform Partnership Act—and not based solely on derivative theories of recovery—we reverse the trial court's order to the extent it entered summary judgment on that claim. We also hold that if GLFP proves that it is entitled to dissolution, it may seek an accounting pursuant to Utah Code Ann. § 48–1–40. Further, we affirm the trial court's refusal to invoke the close corporation exception and agree that GLFP should not be allowed, based on this exception, to bring derivative claims against Defendants directly. Finally, we reverse the trial court's denial of GLFP's motion to amend its complaint and remand for reconsideration of this issue in light of the remaining claims and allegations of GLFP's proposed amended complaint. We caution, however, that the futility excep-

tion to the demand requirement has been narrowly defined by the Utah Supreme Court.

¶ 32 Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

¶ 33 I CONCUR: Judith M. Billings, Judge.

DAVIS, Judge (concurring in part and dissenting in part):

¶ 34 While leave to amend a complaint "shall be freely given when justice so requires," Utah R. Civ. P. 15(a), this court recognizes that "a motion for leave to amend must be accompanied by a memorandum of points and authorities in support and by a proposed amended complaint." *Coroles v. Sabey*, 2003 UT App 339, ¶ 43, 79 P.3d 974 (quotations and citation omitted); *see also Holmes Dev., LLC v. Cook*, 2002 UT 38, ¶ 59, 48 P.3d 895 (holding that a trial court did not abuse its discretion in refusing to allow plaintiff to amend complaint when plaintiff failed to submit a proposed amended complaint with motion). Here, GLFP failed to submit a proposed amended complaint and instead merely promised that it would submit an amended complaint *if* the trial court granted its motion to amend. Respecting the exclusive derivative claims, GLFP failed to make demand on CL Properties prior to seeking leave to amend its complaint and failed to adequately allege or otherwise properly plead entitlement to the futility exception. In addition, the record is unclear respecting whether the motion to amend had anything to do with the dissolution and accounting claims. Thus, in addition to ruling the motion moot, the trial court did not abuse its discretion in refusing GLFP's motion to amend. *See State v. Topanotes*, 2003 UT 30, ¶ 9, 76 P.3d 1159 (holding that appellate courts "may affirm the judgment appealed from if it is sustainable on any legal ground or theory apparent on the record" (quotations and citation omitted)).

¶ 35 I see no justification in this case for departure from *Coroles* and *Holmes*. Therefore, I dissent only from the majority's determination that the trial court erred by deny-

ing GLFP's motion for leave to amend its complaint, and I concur in the remainder of the opinion.