**2019 UT App 67**

## THE UTAH COURT OF APPEALS

DARNELL GHIDOTTI AND GREG GHIDOTTI,
Appellants,
*v.*
MELODIE WALDRON AND RE/MAX METRO,
Appellees.

Opinion
No. 20180045-CA
Filed May 2, 2019

Third District Court, West Jordan Department
The Honorable James D. Gardner
No. 150900601

Lincoln W. Hobbs and Sarah H. Orme, Attorneys
for Appellants

Stuart H. Schultz and Nicholas E. Dudoich,
Attorneys for Appellees

JUDGE KATE APPLEBY authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and DAVID N.
MORTENSEN concurred.

APPLEBY, Judge:

¶1 Darnell and Greg Ghidotti appeal the district court's grant of summary judgment in favor of Melodie Waldron and Re/Max Metro (collectively, Re/Max). The court ruled that the Ghidottis were unable to prove their damages with the requisite degree of

certainty and had not properly disclosed Darnell[1] as an expert witness prior to trial. We affirm.

## BACKGROUND

¶2 The Ghidottis were looking to purchase a house where they could live and operate a dog training and boarding business. They specifically wanted to find one in a community that was not controlled by a homeowners' association (HOA) because they anticipated an HOA would not allow them to operate this type of business from their home. One of the listings the Ghidottis reviewed with their real estate agent was for a property (Property) that apparently was not subject to an HOA: the listing left "blank[s]" after "HOA contact," "HOA phone," and "HOA remarks," and the section identifying "Restrictions on the property" was marked "No."

¶3 The Ghidottis signed a real estate purchase contract for the Property in May 2014. The contract required the sellers (Sellers) to make various disclosures including providing "a copy of any restrictive covenants (CC&Rs) [and] rules and regulations affecting the property." In their disclosures, the Sellers represented the Property was not "part of a condominium or other [HOA]." The Ghidottis allege they were never provided copies of any CC&Rs or rules and regulations affecting the Property. Based on the representations in the real estate purchase contract and the Sellers' disclosures that the Property was not subject to an HOA, the Ghidottis closed the deal on the Property.

¶4 After purchasing the Property, the Ghidottis applied for a conditional use permit, which they needed for keeping dogs on

---

1. As is our practice when parties share a last name, we sometimes refer to them by their first names with no disrespect intended by the apparent informality.

the Property. After becoming aware of the permit application, members of the Country Lane Ranchette's Homeowners' Association objected to its issuance, asserting that the Property was subject to CC&Rs. Further research revealed the Property was in fact subject to CC&Rs, which prohibited the Ghidottis from keeping their own dogs on the Property and precluded them from operating a training and kennel business there.

¶5     The Ghidottis filed a lawsuit in 2015 against the Sellers, Re/Max, and their real estate agent and broker.[2] In March 2015, the Ghidottis served their initial disclosures. The disclosures designated Darnell as a fact witness who potentially would testify about the Ghidottis' desire to purchase property not subject to an HOA, their efforts to ensure the Property was not subject to an HOA, the information provided to them about the Property, and how they discovered it was subject to an HOA. Neither Ghidotti was identified as an individual who would testify about damages. Darnell was mentioned among the "individuals who the plaintiffs may call in their case in chief" along with the phrase, "See summary of expected testimony above." The "computation of damages" section stated that the Ghidottis had "not yet had an opportunity to ascertain their damages." Further, it stated that the damages calculation would "depend upon if and when the [Ghidottis were] able to sell their Property" and "upon the expenses [the Ghidottis were] forced to incur in defending the action brought against them by their neighbors who [were] seeking to enforce the [CC&Rs]."

¶6     As fact discovery progressed, Darnell testified in her deposition about her calculation of damages resulting from their inability to run the business out of their home. Darnell acknowledged this was a new business operation. She also testified there were no other businesses in the area that offered similar services. After Darnell's deposition the Ghidottis filed

---

2. The claims against the Sellers and the Ghidottis' agent and broker were resolved prior to this appeal.

their first supplemental disclosures, which included financial documents "the [Ghidottis] may offer in their case-in-chief." The documents were labeled but no explanation was provided along with them. The Ghidottis filed their second supplemental disclosures, which provided the following damages calculation:

> The [Ghidottis] have computed their damages based on the difference in revenue their business . . . would have earned, had they been able to operate the business as originally planned, and what it will earn in light of the required changes to its business plan. Because the [Property] . . . is in the Country Lane Ranchette's Homeowners' Association and is subject to restrictive covenants—a fact that was concealed from and thus unbeknownst to [the Ghidottis] at the time of their purchase, despite their efforts to avoid purchasing a property in a homeowners association—[the Ghidottis] cannot operate the business on their property, as originally intended, but will have to operate the business at an off-site location. Operating at an off-site facility changes the services [the Ghidottis] can offer and increases operation costs. The [Ghidottis] calculate that the total damages, over the 20 years that [they] intend to run their business, will be $2,784,159.[3]

The Ghidottis did not disclose any expert witnesses and acknowledge they never intended to do so.

¶7     In late 2015, the Ghidottis' real estate agent and broker filed a motion for summary judgment arguing the Ghidottis were unable to prove their damages with reasonable certainty.[4]

---

3. This is the entire damages calculation.

4. Re/Max joined the motion.

The district court granted the motion and dismissed the Ghidottis' claims against their real estate agent and broker as well as Re/Max. The court ruled that the Ghidottis could not prove their damages with the requisite degree of certainty because they did "not have an expert to testify on profit potential." And although the Ghidottis suggested that "Darnell planned to offer expert testimony at trial," they did not properly disclose her as an expert witness under the Utah Rules of Civil Procedure. The Ghidottis appeal.

## ISSUE AND STANDARD OF REVIEW

¶8　　The Ghidottis argue the district court erred in granting summary judgment on the grounds that Darnell was not properly disclosed as an expert witness under the Utah Rules of Civil Procedure and therefore they failed to prove their damages with the requisite degree of certainty. "Interpretation of the Utah Rules of Civil Procedure is a question of law that we review for correctness." *Pete v. Youngblood*, 2006 UT App 303, ¶ 7, 141 P.3d 629. This court also "reviews a [district] court's entry of summary judgment for correctness and gives its conclusions of law no deference." *Utah Farm Bureau Ins. Co. v. Crook*, 1999 UT 47, ¶ 3, 980 P.2d 685. Further, "in reviewing a grant of summary judgment, we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *GLFP, Ltd. v. CL Mgmt., Ltd.*, 2007 UT App 131, ¶ 5, 163 P.3d 636 (quotation simplified).

## ANALYSIS

¶9　　The Ghidottis challenge the district court's finding that they failed to timely disclose their intent to rely on Darnell as a non-retained expert witness. They acknowledge they did not properly disclose her as a retained expert but argue they "implicitly and sufficiently identified [Darnell] as an unretained expert witness to testify regarding the Ghidottis' damages." The

Ghidottis argue that Darnell was properly disclosed as a non-retained expert when they listed her as a potential fact witness in their initial disclosures, when she testified about their damages during her deposition, and when they disclosed their financial documents in their first supplemental disclosures. The Ghidottis argue summary judgment was improper because these disclosures gave Re/Max "ample notice" that they intended to have Darnell testify about their damages as an expert at trial. We disagree.

¶10   Summary judgment is appropriate when "the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Utah R. Civ. P. 56(a). The district court "should not weigh disputed evidence" and must view "the facts and all reasonable inferences to be drawn therefrom in a light most favorable to the nonmoving party." *Pigs Gun Club, Inc. v. Sanpete County*, 2002 UT 17, ¶ 24, 42 P.3d 379 (quotation simplified).

¶11   In this case, Re/Max argued the Ghidottis were unable to prove damages with the requisite degree of certainty and therefore their claims should be dismissed on summary judgment. To recover damages, a plaintiff must prove both the fact of damages and the amount of damages. *Atkin, Wright & Miles v. Mountain States Tel. & Tel. Co.*, 709 P.2d 330, 336 (Utah 1985). "The level of persuasiveness required to establish the fact of loss is generally higher than that required to establish the amount of a loss." *Id.* (quotation simplified). But "there still must be evidence that rises above speculation and provides a reasonable, even though not necessarily precise, estimate of damages." *Id.*

¶12   The Ghidottis sought damages in the form of lost profits, which "must be established with . . . sufficient certainty that reasonable minds might believe from a preponderance of the evidence that the damages were actually suffered." *Kilpatrick v. Wiley, Rein & Fielding*, 2001 UT 107, ¶ 76, 37 P.3d 1130 (quotation simplified). In particular, new businesses, such as the Ghidottis',

"lack an actual record of past earnings, which decreases the certainty with which one could predict future profits." *Id.* (quotation simplified). But this does not "automatically preclude new businesses from recovering lost profits" and "new businesses should be allowed to try to prove lost profits up to a reasonable level of certainty by other means." *Id.* (quotation simplified). "Alternative means of establishing the certainty of lost profits include expert testimony of profit potential, evidence of the actual profits of similar businesses, and evidence of subsequent earnings of the business claiming lost profits." *Cook Assocs., Inc. v. Warnick*, 664 P.2d 1161, 1166 n.4 (Utah 1983).

¶13    In this case, the Ghidottis desired to start a new business. Because they did not have any record of past earnings they needed to prove their damages through other means.[5] *See id.* It also was undisputed that the Ghidottis did not retain an expert to testify about profit potential. In its ruling the district court noted that during the hearing on the motion for summary judgment the Ghidottis "seemed to suggest that [Darnell] planned to offer expert testimony on profit potential at trial." But as the district court ruled, the Ghidottis never properly disclosed Darnell as a non-retained expert under rule 26(a)(4)(E) of the Utah Rules of Civil Procedure, which provides,

> If a party intends to present evidence at trial under Rule 702 of the Utah Rules of Evidence from any person other than an expert witness who is retained or specially employed to provide testimony . . . that party must serve on the other parties a written summary of the facts and opinions to which the witness is expected to testify.

---

5. The Ghidottis challenge only the court's finding that they did not properly disclose Darnell as an expert witness. They do not argue that they should have been able to prove their damages through the other two means mentioned in *Cook Assocs., Inc. v. Warnkick*, 664 P.2d 1161, 1166 n.4 (Utah 1983).

¶14 The Ghidottis argue they adequately disclosed "a written summary of the facts and opinions to which [Darnell was] expected to testify." Utah R. Civ. P. 26(a)(4)(E). But contrary to this argument, such a disclosure is not enough. This court has consistently held that disclosing a witness as a fact witness, by itself, is insufficient to allow that witness to also present expert testimony. *See Solis v. Burningham Enters. Inc.*, 2015 UT App 11, ¶ 19, 342 P.3d 812 (explaining that disclosing a witness as a fact witness but omitting the witness from the expert witness list "did not fairly inform [the opposing parties] that opinion testimony may be offered from [the witness]" (quotation simplified)); *Hansen v. Harper Excavating, Inc.*, 2014 UT App 180, ¶ 17, 332 P.3d 969 ("[A party's] disclosure of his intent to call treating physicians as fact witnesses is not sufficient to allow the admission of their expert opinions."); *Ladd v. Bowers Trucking, Inc.*, 2011 UT App 355, ¶ 13, 264 P.3d 752 ("Without an expert witness designation, [the plaintiff] cannot establish causation."); *Pete v. Youngblood*, 2006 UT App 303, ¶¶ 15–16, 141 P.3d 629 (determining that the plaintiff was required to "identify [a witness] as a person who may be used at trial to present expert testimony" despite the plaintiff's argument that she "substantially complied with the requirements of [the expert witness disclosure rule] because [the witness] was named as a fact witness"). Here, the Ghidottis produced a summary of what Darnell was expected to testify about as a fact witness, not as an expert. We conclude that this was insufficient to disclose Darnell as a non-retained expert witness under rule 26(a)(4)(E).

¶15 The Ghidottis also argue that they implicitly disclosed Darnell as an expert witness and the substance of her potential testimony was properly disclosed through her deposition and financial documents. This argument is contrary to our precedent. In *Solis*, this court held that implicit disclosures are insufficient to qualify a fact witness as an expert witness. 2015 UT App 11, ¶ 19. The plaintiff in *Solis* claimed she adequately notified the defendants of her intent to use a designated fact witness as an expert witness because her initial disclosures included diagrams she expected the witness to testify about. *Id.* ¶ 18. Relying on

*Pete*, this court determined that designating a fact witness and also providing supplemental records or diagrams is insufficient to designate that witness as an expert. *Id.* Ultimately, if a party designates a fact witness but fails to include that witness on an expert witness list, that party fails to satisfy the expert disclosure requirements under rule 26. *Id.* ¶ 19. Here, the Ghidottis failed to include Darnell as an expert in their disclosures. Thus, their "implicit" disclosure through other means did not comply with rule 26.

¶16 The Ghidottis argue that such a narrow interpretation of expert disclosure requirements is inconsistent with rule 1, which states that the rules of civil procedure "shall be liberally construed and applied to achieve the just, speedy, and inexpensive determination of every action." Utah R. Civ. P. 1. We recognize that "'all [the disclosure rules] require is that a party fairly inform its opponent that opinion testimony may be offered from a particular witness.'" *RJW Media Inc. v. Heath*, 2017 UT App 34, ¶ 23, 392 P.3d 956 (quoting Utah R. Civ. P. 26 advisory committee notes). But the requirement to "'fairly inform . . . includes 'that such witnesses be identified and the information about their anticipated testimony should include . . . any opinion testimony that a party expects to elicit from them at trial.'" *Id.* ¶ 24 (quoting Utah R. Civ. P. 26 advisory committee notes). Importantly, "[a]long with the expert designation, there must be some disclosure of expected opinion and fact testimony." *Id.* (emphasis added). That did not happen here. Darnell was never designated as an expert and her opinions were not adequately disclosed. Adhering to the requirements of the disclosure rule is not, under these circumstances, inconsistent with rule 1.

¶17 As this court noted in *RJW*, disclosure requirements are "not merely a matter of form." *Id.* ¶ 25. The disclosure requirements "serve the beneficial purpose of . . . giving the opposing party the confidence to not engage in further discovery. But this is only true if the potential for surprise is reduced by at least minimum compliance with the rule 26

disclosure requirements." *Id.* These minimal disclosure requirements are necessary so "parties can make better informed choices about the discovery they want to undertake or, just as important, what discovery they want to forgo." *Id.* Here, Re/Max relied on the Ghidottis' representation that they had no intention of using experts in not hiring any experts of their own. Such strategic decisions are a key aspect of discovery and must be carefully safeguarded by strictly following the disclosure requirements.

¶18    Finally, the district court ruled that the Ghidottis did not demonstrate that their failure to disclose Darnell as an expert was harmless or that there was good cause for the omission. *See* Utah R. Civ. P. 26(d)(4) ("If a party fails to disclose or to supplement timely a disclosure or response to discovery, that party may not use the undisclosed witness, document or material at any hearing or trial unless the failure is harmless or the party shows good cause for the failure."). The court ruled that late disclosure of Darnell as an expert would be harmful because the time set for trial was approaching and none of the defendants had retained experts in reliance on the Ghidottis not disclosing any expert witnesses. We conclude the court did not abuse its discretion in making this determination. *See Townhomes at Pointe Meadows Owners Ass'n v. Pointe Meadows Townhomes, LLC*, 2014 UT App 52, ¶ 17, 329 P.3d 815 (holding that the district court did not abuse its discretion in finding the failure to disclose an expert was not harmless when "a substantial amount of discovery would need to be revisited or performed . . . well after the deadline for completing these steps had passed"), *superseded by rule as stated in Baumann v. Kroger Co.*, 2016 UT App 165, 381 P.3d 1135. This finding also supports strict enforcement of the disclosure requirements because allowing parties to designate witnesses at this stage in the litigation would not promote a just, speedy, and inexpensive determination of an action as envisioned by rule 1 of the Utah Rules of Civil Procedure.

¶19    We conclude that Darnell's testimony about damages in her deposition, the financial exhibits, and the statement of

damages in the supplemental disclosures are insufficient to support a conclusion that Darnell was properly disclosed as a non-retained expert witness under the Utah Rules of Civil Procedure.

CONCLUSION

¶20    The district court properly granted summary judgment in favor of Re/Max when the Ghidottis failed to prove their damages with the requisite degree of certainty by failing to properly disclose Darnell as an expert witness. Affirmed.

———————