1999 Utah Ct. App. 348

**PRIMARY CHILDREN'S HOSPITAL and Sean Daugaard, Petitioners,**

v.

**UTAH DEPARTMENT OF HEALTH, DIVISION OF HEALTH CARE FINANCING, Respondent.**

No. 981709–CA.

Court of Appeals of Utah.

Dec. 2, 1999.

---

Merrill F. Nelson, Kirton & McConkie, Salt Lake City, for Petitioners.

Jan Graham, Atty. Gen., and Jean P. Hendrickson, Asst. Atty. Gen., Salt Lake City, for Respondent.

Before WILKINS, P.J., BENCH and DAVIS, JJ.

## OPINION

DAVIS, Judge:

¶ 1 Primary Children's Hospital (Primary) petitions this court for review of a final agency decision denying Medicaid reimbursement for failure to obtain prior authorization for services. We reverse.

## FACTS

¶ 2 In March of 1997, five-year-old Sean Daugaard was admitted to Primary and later diagnosed with Acute Lymphoblastic Leukemia. Chemotherapy was unsuccessful, and Sean's physician concluded that a bone marrow transplant was necessary to save Sean's life. Because the family did not have the means to pay for the transplant, Richard Fairborn, Primary's resource counselor, helped the family obtain Medicaid coverage. Medicaid coverage was established on June 9, 1997, retroactive to March 1, 1997. Accordingly, Medicaid paid for the diagnostic and treatment services rendered from March until coverage was established.

¶ 3 In preparation for the transplant, Sean was admitted to Primary on July 8, 1997. Several days of pre-transplant conditioning therapy would take place before the actual transplant. On July 9, Mr. Fairborn reviewed the status of Sean's Medicaid eligibility on the computer database of the Utah Division of Health Care Financing (DHCF), the state agency responsible for administering the Medicaid program. *See* Utah Code Ann. §§ 26–18–2.1, –3 (1998 & Supp.1999).

Mr. Fairborn did so because, to obtain Medicaid reimbursement for Primary's cost of the transplant, Primary was required to submit a request for prior authorization before the transplant took place. *See* Utah Code Admin. P. R414–10A–6(1) (Supp.1997) ("Prior authorization is required for all transplantation services. . . ."). However, notwithstanding the recent establishment of Medicaid eligibility, DHCF's database showed that Sean was no longer eligible.

¶ 4 After discovering Sean was no longer eligible, Mr. Fairborn spoke to Debbie Lucero, the Medicaid eligibility officer for DHCF, who maintained an office at Primary. Ms. Lucero confirmed that DHCF showed that Sean did not have Medicaid coverage and told Mr. Fairborn that Sean's Medicaid status was under review. Ms. Lucero directed Mr. Fairborn to have Sean's family submit a new application for Medicaid eligibility. The requested application was completed by Sean's mother and personally delivered to Ms. Lucero by Mr. Fairborn that same day.

¶ 5 Because Sean was apparently not eligible for Medicaid coverage at that time, Primary did not submit a request for prior authorization. Prior practice between DHCF and Primary was that when Medicaid eligibility had not been established for an individual, DHCF suspended the prior authorization requirement, allowing post transplant, retroactive authorization. DHCF characterized this situation as an "unusual circumstance" within the meaning of Rule 414–10A–4(5) of the Utah Administrative Code.

¶ 6 Ms. Lucero had routinely notified Mr. Fairborn immediately and in person of Medicaid eligibility determinations, and he waited for her response. However, unbeknownst to Mr. Fairborn, on July 9, Ms. Lucero determined that Sean's Medicaid eligibility was unchanged, resumed his coverage, and authorized the issuance of a Medicaid card for July 1997.

¶ 7 Although Primary believed that Sean was not then covered by Medicaid, it proceeded with the bone marrow transplant, expecting to make application for retroactive authorization and receive reimbursement in

accordance with prior practice. The transplant was completed on July 17, 1997.

¶ 8 On August 1, 1997, during a routine review of pending cases, Mr. Fairborn discovered that Sean's Medicaid eligibility had been reestablished. In fact, DHCF showed that there had been no break in Sean's coverage, but that he had been eligible for Medicaid during all of July. When asked about the glitch, Mr. Fairborn was told that a system "rollover" had occurred, meaning that it was time to update Sean's Medicaid eligibility and the system thereby indicated his ineligible status.

¶ 9 Sean remained hospitalized until September 19, 1997. On that day, Primary prepared its request for retroactive authorization and reimbursement for the transplant. DHCF received this request form on October 29, 1997. In December 1997, DHCF issued a Notice of Denial letter that denied Primary's Medicaid reimbursement request based on the lack of substantiation of Medicaid criteria. Subsequently, an Amended Notice of Denial was issued adding lack of prior authorization as a basis. A formal hearing before an administrative law judge (ALJ) was scheduled for August 1998. Before the hearing took place, DHCF issued yet another Amended Notice of Denial that listed lack of prior authorization as the sole basis for denying the reimbursement request.

¶ 10 At the hearing, Primary argued that: (1) based on prior practice with DHCF, Primary has never been required to send in a request for prior authorization when DHCF's system shows no eligibility; (2) the applicable agency rules provide for retroactive authorization under "unusual, emergency circumstances," Utah Code Admin. P. R414–10A–4(5) (Supp.1997), and the fact situation here constitutes unusual circumstances; and (3) because DHCF advised Primary that Sean's Medicaid eligibility had lapsed, when in fact it had not, and it was this misinformation upon which Primary relied when it did not file the request for prior authorization, DHCF should be estopped from denying reimbursement. DHCF maintained that had Primary been diligent in monitoring Sean's Medicaid status, it would have been aware of his continuous Medicaid coverage, regardless of the misinformation given regarding the

lapse in eligibility. Thus, DHCF argued, because Primary failed to get prior authorization before the transplant as required by the agency rules, and retroactive authorization will be allowed only in unusual, emergency circumstances, which DHCF argued were not present under the facts here, Primary was not entitled to Medicaid reimbursement.

¶ 11 The ALJ entered a Recommended Decision, ruling in favor of DHCF. The ALJ concluded that Primary unreasonably failed to track Sean's Medicaid eligibility and therefore failed to file the prior authorization request. Based on Primary's lack of diligence, the ALJ concluded that Primary's actions did not amount to unusual circumstances which would have entitled Primary to retroactive authorization, nor was DHCF estopped from denying coverage based on the misinformation given Primary. Thus, the ALJ affirmed DHCF's denial of Medicaid reimbursement.

¶ 12 Primary filed a Request for Reconsideration with the Director of DHCF. A Final Agency Order was issued, wherein the ALJ's Recommended Decision was adopted in its entirety. Primary has petitioned this court for review of the Final Agency Order.

## ISSUE AND STANDARD OF REVIEW

■ ¶ 13 The sole issue for our review is whether DHCF erred by denying Medicaid

reimbursement to Primary for Sean's bone marrow transplant because it failed to file a request for prior authorization as required by the agency's rules.[1] Because "the legislature has, by virtue of section 26–18–2.3(1) [of the Utah Code], explicitly granted DHCF discretion to establish criteria concerning Medicaid reimbursement[,] ... [w]e review DHCF's decision denying Medicaid reimbursement for medical care that [Primary] provided [Sean for the bone marrow transplant] for reasonableness and rationality." *South Davis Community Hosp., Inc. v. Department of Health,* 869 P.2d 979, 982 (Utah Ct.App.1994) (footnote omitted).

## ANALYSIS

¶ 14 DHCF is required by statute to "establish ... a program to safeguard against unnecessary or inappropriate use of Medicaid services." Utah Code Ann. § 26–18–2.3(1) (1998). Accordingly, DHCF has promulgated rules relating to transplant services. *See* Utah Code Admin. P. R414–10A–1 to –23 (Supp.1997). "Transplantation services are covered by the Utah Medicaid program only when" certain criteria under the rules established by DHCF are met. *Id.* R414–10A–5(1). These criteria include obtaining authorization before the transplant takes place. *See id.* R414–10A–5(1), –6(1). Thus, if Pri-

1. DHCF suggests in its brief that because "there was no consideration at the administrative hearing of the medical services provided, there were no admissions by [DHCF] as to the appropriateness of the services rendered." However, in its last Amended Notice of Denial, DHCF omitted lack of substantiation of Medicaid criteria as a basis for denial, relying exclusively on lack of prior authorization.

At the hearing before the ALJ, counsel for DHCF on more than one occasion stated that the only issue before the ALJ was prior authorization. Indeed, when the ALJ queried counsel on the issues to be addressed at the hearing, the ALJ asked if the issue was "whether or not ... Sean Daugaard ... met the Utah Medicaid criteria for a bone marrow transplant? Or is it the issue in the latest denial letter, which is merely a prior authorization issue?" Counsel for DHCF responded: "Your Honor, as I see it, it's merely a prior authorization issue today."

Accordingly, even though there is a lower standard for raising issues at an informal agency. hearing, *see Badger v. Brooklyn Canal Co.,* 966

P.2d 844, 847 (Utah 1998) (adopting " 'level of consciousness' test, requiring a plaintiff to bring an issue to the fact finder's attention so that there is at least the possibility that it could be considered"), DHCF not only failed to meet this lower standard, but appears to have abandoned any claim that Primary failed to substantiate the other Medicaid criteria as required. *Cf. Career Serv. Review Bd. v. Utah Dep't of Corrections,* 942 P.2d 933, 938 (Utah 1997) (stating res judicata applies to administrative agency decisions); *Salt Lake Citizens Congress v. Mountain States Tel. & Tel. Co.,* 846 P.2d 1245, 1251 (Utah 1992) (same); *Kirk v. Division of Occupational & Prof'l Licensing,* 815 P.2d 242, 243 (Utah Ct.App.1991) (same); *see also Macris & Assocs., Inc. v. Neways, Inc.,* 986 P.2d 748, 750 (Utah Ct.App.1999) (stating claim preclusion applies when " 'both cases ... involve the same parties or their privies'; ... 'the claim that is alleged to be barred must have been presented in the first suit or must be one that could and should have been raised in the first action'; and ... 'the first suit must have resulted in a final judgment on the merits' ") (citation omitted).

mary does not receive the requisite prior authorization under Rule 414–10A–6(1), then, under Rule 414–10A–5(1), the cost of services it provides for a transplant may not be covered by Medicaid.

¶ 15 An exception to the prior authorization requirement is provided in Rule 414–10A–4(5):

Post transplant authorization for transplantation services provided under unusual, emergency circumstances may be given only when:

(a) all Utah Medicaid criteria listed in R414–10A–6 through 22 are met; [2] and

(b) both the transplant center and the board-certified or board-eligible specialist evaluation required by R414–10A–6(3)(f), (p), (q), and (r) are submitted with the recommendation that the tissue or organ transplantation be authorized.

*Id.* R414–10A–4(5).

■■■ ¶ 16 DHCF argues, and the ALJ concluded, that the facts before us, including Primary's lack of diligence, do not amount to unusual circumstances [3] which would allow Primary retroactive authorization for Sean's bone marrow transplant. At the administrative hearing, however, ·counsel for DHCF conceded that when Medicaid eligibility was not established or when a provider was unaware that a patient was going to be a Medicaid recipient, requirements for prior authorization were suspended and providers proceeded under Rule 414–10A–4(5), which provides for post transplant authorization under unusual or emergency circumstances.

¶ 17 Further, the ALJ made findings to the effect that Sean's Medicaid eligibility had apparently indeed lapsed when Mr. Fairborn checked DHCF's computer on July 9, 1997.[4] Thus, DHCF's argument before the ALJ and on appeal is that regardless of the fact that DHCF showed a lapse in coverage, unusual circumstances do not exist when Primary failed to discover the corrected status of Sean's Medicaid coverage in time to seek prior authorization. Primary researched Sean's Medicaid status on July 9, found that no coverage existed, and caused a new Medicaid application to be filed the same day. Only eight days after submitting the new Medicaid·application to DHCF as requested, Sean's bone marrow transplant was completed. Thus, the record does not reflect lack of diligence by Primary in discovering the lapse of coverage, bringing it to DHCF's attention, and promptly returning the information requested by DHCF. Primary discovered on August 1, 1997 that Sean had been eligible for Medicaid coverage for the month of July. Thus, only three weeks had passed before Primary became aware of the mistake, which, undisputably, was caused by DHCF. It is neither reasonable nor rational on these facts to condition the existence of unusual circumstances on Primary's lack of diligence.

¶ 18 Because both the undisputed facts and unchallenged findings of the ALJ support Primary's position, DHCF also urges an exception to the exception it created by Rule 414–10A–4(5) and by consistent prior practice, to wit: actual coverage precluding an assertion of unusual circumstances. The

2. Rule 414–10A–4(5) allows post transplantation authorization under "unusual, emergency circumstances." Utah Code Admin. P. R414–10A–4(5) (Supp.1997). The language in subsection (a) provides that post transplant authorization may be given "only when ... all Medicaid criteria listed in R414–10A–6 [are] met." *Id.* R414–10A–4(5). Those criteria include prior authorization pursuant to R414–10A–6(1). *See id.* Ordinarily, post transplant authorization would not be required if the provider had obtained prior authorization. We therefore harmonize the provisions, *see In re K.M.,* 965 P.2d 576, 580 (Utah Ct.App. 1998) (" 'In interpreting a statute, we read it to harmonize it with its subsections.' ") (citation omitted), and, on the facts of this case, proceed as if prior authorization is not a precondition to retroactive authorization.

3. The language of the rule is "unusual, emergency circumstances." Utah Code Admin. P. R414–10A–4(5) (Supp.1997). While this language is not a model of clarity, during the administrative hearing both parties and the ALJ treated the language as meaning unusual *or* emergency circumstances. We agree. Rules of grammar provide that when there is a comma between two coordinate adjectives preceding a noun, each of those adjectives "modifies the noun itself." *Chicago Manual of Style* § 5.51 (14th ed.1993). Thereafter the ALJ, in her recommended conclusions of law, again treated "unusual circumstances" separately from "emergency circumstances."

4. While DHCF does not necessarily agree with this characterization, it does not properly challenge this finding on appeal.

only difference between this case and other situations when DHCF admittedly entertained retroactive authorization requests is that Sean *in fact* had Medicaid coverage when the services were rendered. According to DHCF, this distinction is fatal. Thus, DHCF asserts that if Primary is prepared to run the risk of a subsequent determination of Medicaid ineligibility *and* the risk of failing to meet appropriate Medicaid criteria, an application for retroactive authorization is appropriate. But when, as here, eligibility had been established, albeit unbeknownst to Primary, and Primary risked only its possible inability to meet other criteria, application for retroactive authorization is inappropriate. Such a position is equally unreasonable and irrational.

## CONCLUSION

¶ 19 We hold that DHCF acted unreasonably and irrationally by denying Primary's application for retroactive authorization for Sean's bone marrow transplant. The sole reason DHCF denied Primary's Medicaid reimbursement request was because Primary failed to file the requisite request for prior authorization. The agency rules provide for retroactive authorization under "unusual … circumstances" which have consistently included retroactive authorization when the patient had not established Medicaid eligibility before the rendering of services. To make a distinction based upon an erroneous determination by DHCF of eligibility or ineligibility and a level of diligence in discovering the agency's mistake is inconsistent with prior practice, unusual circumstances, and is both unreasonable and irrational. We therefore reverse the final agency order denying Primary's application for retroactive authorization and Medicaid reimbursement for the transplant.[5]

¶ 20 WE CONCUR: MICHAEL J. WILKINS, Presiding Judge, and RUSSELL W. BENCH, Judge.

---

5. Because of our disposition, we do not address Primary's argument regarding equitable estop-pel.