2019 UT App 37

## THE UTAH COURT OF APPEALS

VT HOLDINGS LLC, MATTHEW D. SCOTT, AND NELSON MOAK,
Appellants,
*v.*
MY INVESTING PLACE LLC, FIRST AMERICAN TITLE INSURANCE
AGENCY LLC, KAREN OGDEN, AND REAL CAPITAL FUNDING LTD,
Appellees.

Opinion
No. 20170647-CA
Filed March 14, 2019

Fifth District Court, St. George Department
The Honorable Thomas M. Higbee
No. 100503684

Gary W. Pendleton, Attorney for Appellants

Erik A. Olson, Bruce R. Baird, David C. Castleberry,
Ronald G. Russell, and Matthew J. Ball, Attorneys
for Appellees

JUDGE DIANA HAGEN authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and JILL M. POHLMAN
concurred.

HAGEN, Judge:

¶1    This appeal stems from a judicial foreclosure action brought by lenders VT Holdings LLC, Matthew D. Scott, and Nelson Moak (collectively, VT Holdings) against property owner My Investing Place LLC (MIP) and lenders Karen Ogden and Real Capital Funding LTD (collectively, RCF). Although VT Holdings had previously executed a document reconveying its fourth-position trust deed to RCF, it claimed that the reconveyance was ineffective because it never provided RCF with an original copy of the document. VT Holdings also sought damages against First American Title Insurance Agency LLC

(First American) for wrongfully recording the reconveyance based on an electronically transmitted document. Following a bench trial, the district court determined that the reconveyance was effective because the parties had agreed to conduct business electronically. The court dismissed VT Holdings' claims and quieted title to the property at issue in favor of RCF. We affirm.

BACKGROUND[1]

¶2 MIP purchased real property (the Property) from VT Holdings, which MIP financed through several sources. RCF provided a bridge loan[2] of $2.8 million[3] to MIP in exchange for a promissory note secured by a first deed of trust with assignment of rents to RCF as the beneficiary and First American as the trustee. MIP intended to obtain permanent financing from other sources and to repay RCF's bridge

---

1. "On appeal from a bench trial, findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." *Armed Forces Ins. Exch. v. Harrison*, 2003 UT 14, ¶ 2, 70 P.3d 35 (quotation simplified). "We relate the facts accordingly, granting due deference to the trial court's resolution of factual disputes." *Id.*

2. "A bridge loan is a short-term loan used until a person or company secures permanent financing or removes an existing obligation. It allows the user to meet current obligations by providing immediate cash flow." *Bridge Loan Definition*, Investopedia (January 11, 2019), https://www.investopedia.com/terms/b/bridgeloan.asp [https://perma.cc/6VB3-VXA9].

3. RCF initially funded $2.9 million but "reduced the funded amount by $100,000 at or near the time of closing and for all purposes relevant here the original secured amount was $2.8 million."

loan within ninety days. First American recorded the RCF trust deed, and, as intended by the parties, the RCF trust deed was in first priority position. MIP also obtained financing from two other outside sources and those loans were secured by trust deeds recorded in second and third positions. Finally, VT Holdings provided $450,000 in seller financing secured by a trust deed in fourth position.

¶3    Ultimately, MIP defaulted on all four loans secured by the four trust deeds. RCF, based on its first priority position, had two options: it could foreclose its trust deed or "it could take back deeds in lieu of foreclosure." Although taking the deeds in lieu of foreclosure was a "riskier" choice, RCF determined it was the "most viable" option because the value of the Property was less than the value of the RCF trust deed.

¶4    The lenders in second and third positions reconveyed their trust deeds to RCF. RCF also requested a reconveyance from VT Holdings. Two of RCF's partners, Brady Boman and Ray Zoll, contacted Moak, the majority owner of VT Holdings, and asked him to authorize a request for reconveyance (the Request for Reconveyance). Without a reconveyance, Boman and Zoll told Moak that RCF would foreclose the RCF trust deed, which would "wipe out" VT Holdings' interest. Boman testified that during this time "there were some discussions about [Moak] being involved with [developing the Property] in the future, but they were very general and very limited."

¶5    Three of RCF's representatives testified that Moak agreed to the reconveyance. Because Boman's practice was to deliver the originals of the documents to the title company for recording, he told Moak that he would need the original copy of the Request for Reconveyance. According to Boman, Moak would sign the Request for Reconveyance, "fax it to Zoll's office, and then deliver the original in due time." After the conversations with Moak, Zoll emailed Moak the Request for Reconveyance. Moak and his business partner, Scott, signed and

notarized it. Moak then faxed the Request for Reconveyance back to RCF.

¶6     According to Moak, he signed, notarized, and faxed the Request for Reconveyance "only as a showing of good faith to demonstrate that he would be willing to deliver the original if some sort of agreement could be reached regarding his future participation" in developing the Property. But he did not communicate that intent or place any conditions on the Request for Reconveyance when he faxed it to RCF. RCF's paralegal testified that when she followed up with Moak, he agreed to sign and return the Request for Reconveyance without providing any conditions or asking her to wait to send it to First American for recording. A few days after he faxed the Request for Reconveyance back to RCF, Moak met with one of RCF's representatives who "was not impressed with anything [Moak] had to offer" regarding future participation in developing the Property. That representative did not ask Moak for the original copy of the Request for Reconveyance and Moak "did not volunteer it."

¶7     RCF delivered the Request for Reconveyance to First American via email. First American recorded the reconveyance (the Full Reconveyance) and mailed a copy of the Full Reconveyance to VT Holdings' business address, which released VT Holdings' trust deed and gave RCF clear title to the Property. According to Moak, he did not receive the copy of the Full Reconveyance and was not made aware of it until one year later. After waiting a few months, Moak attempted to contact RCF about the Full Reconveyance, but was unsuccessful. Moak then contacted First American and requested that it rescind the Full Reconveyance because Moak never gave RCF an original copy of the Request for Reconveyance and had never intended VT Holdings' trust deed to be reconveyed. After Moak complied with the requirement for requesting a rescission of a recorded reconveyance, First American recorded a Rescission and Notice of Erroneous Recordation (the Rescission).

¶8    Following the Rescission, VT Holdings initiated this lawsuit, seeking judicial foreclosure of its trust deed and naming MIP and RCF as defendants.[4] VT Holdings sought judgment in the amount of $472,500, "plus interest at the rate of fifteen percent" and an order "extinguishing any interest of [the named defendants] in [the Property]." In the same lawsuit, VT Holdings sued First American for erroneously reconveying VT Holdings' trust deed without authorization and for the expenses VT Holdings would "reasonably incur in successfully defending [its] interest and priority in [the Property]" and "the diminution in the value of [its] interest in [the Property] occasioned by the intervening lien or interest of any innocent third party."

¶9    In response, RCF answered the complaint and asserted counterclaims, seeking to quiet title in its favor. First American also answered the complaint and First American and RCF asserted crossclaims against each other. The parties engaged in fact and expert discovery and RCF designated an expert witness to testify to the statutory requirements and industry standards of a title company's duty to a beneficiary when recording reconveyances. First American designated Paul D. Newton as an expert witness to rebut RCF's expert's testimony. VT Holdings did not designate any expert witnesses. After both expert witnesses were deposed, VT Holdings certified the case ready for trial.

¶10    Prior to trial, First American determined that it correctly recorded the Full Reconveyance based on the electronic copy transmitted by RCF and therefore erroneously recorded the Rescission requested by VT Holdings. RCF and First American settled their differences and the court entered an order dismissing their crossclaims. RCF then filed a motion in limine to bar Newton from testifying at trial. Having settled its claims

---

4. VT Holdings named other parties as defendants, but those parties are not relevant to this appeal.

with RCF, First American "stipulated to the entry of an order barring his testimony."

¶11    VT Holdings opposed the motion and claimed that there was "nothing to prevent" it from calling Newton as an expert witness, "or, in the event of his 'unavailability,' presenting his testimony by use of his deposition." VT Holdings explained that the opinions advanced by Newton were "in line with the theories of breach that [VT Holdings] advanced throughout the proceedings." But the district court concluded that VT Holdings was precluded from calling Newton because it never designated him as an expert witness as required by rule 26 of the Utah Rules of Civil Procedure. The court explained that the "substance of [Newton's] position was known, to be sure, but the parties are entitled to rely upon designation itself, or lack there[of], as they prepare" for trial. The court granted the stipulated motion in limine and excluded Newton's testimony.

¶12    The case proceeded to a three-day bench trial. VT Holdings presented its case-in-chief and argued that the reconveyance was ineffective because VT Holdings did not deliver the original copy of the Request for Reconveyance, as required by industry standards, and did not agree to conduct business electronically with RCF, as required by statute. VT Holdings also claimed that First American breached its duty under the trust deed because it could only reconvey the trust deed "upon written request of [VT Holdings] . . . and presentation of [VT Holdings' trust deed] and the note for endorsement." VT Holdings argued that this language of the trust deed required First American to obtain the original copy of the Request for Reconveyance and not an electronic copy. VT Holdings relied primarily on Moak's testimony to prove its claims.

¶13    When VT Holdings rested its case-in-chief on the second day of trial, First American moved for judgment on partial findings under rule 52(e) of the Utah Rules of Civil Procedure. First American first argued that VT Holdings failed to prove that

First American breached its duty of care when it recorded the Full Reconveyance without the original copy of the Request for Reconveyance because VT Holdings did not present expert testimony or other evidence "to establish such a standard of care, [which is] an essential element of their claim." Second, First American argued that VT Holdings failed to offer any evidence of damages or diminution of value of their interest in the Property. The district court granted First American's motion with respect to the claim for money damages, but it denied the motion with respect to whether First American breached a duty owed to VT Holdings, concluding that the court would be "in a better position to rule on that issue" after RCF presented its defense that the Full Reconveyance was properly recorded. The court explained that First American would remain a party in the case only for the resolution of whether the Full Reconveyance was properly recorded, which could have an effect on RCF's request to quiet title to the Property in its favor.

¶14    Following the bench trial, the district court issued its ruling, finding that "the position stated by [Moak] doesn't make any sense" because "[s]igning an ineffective document adds nothing to either the good faith of [VT Holdings] or the likelihood that a deal would be reached" between VT Holdings and RCF about future development possibilities related to the Property. Moak attempted to provide "other explanations about why he signed and returned [the Request for Reconveyance] to RCF even though it wasn't going to be effective, none of which [made] sense" to the court. In addition, the court found that VT Holdings was "not in a position to start throwing out demands." "Had Moak told [RCF] flat out that he would not sign [the Request for Reconveyance] until they had reached a deal" that allowed VT Holdings to stay involved in developing the Property, "it seem[ed] pretty clear that RCF would simply have foreclosed" without VT Holdings' reconveyance because VT Holdings' trust deed position was "behind two prior trust deeds securing balances significantly greater than the value of [the Property]." Also, by selling the Property to MIP in the first place, VT Holdings showed that it "wasn't interested [in] and/or didn't

have the ability to develop" the Property. The court ultimately found that "[i]t strains credulity to think that RCF would risk its first priority on the possibility that they could reach a subsequent vague deal with Moak," who had nothing to offer and "could not improve the development possibilities" of the Property.

¶15 The court concluded that "the Request for Reconveyance was properly delivered and was effective when delivered. . . . Zoll made the request supported by the conversation between Boman and Moak. [RCF's paralegal] followed up. [Moak] obtained signatures on the [Request for Reconveyance] and returned it via fax to [RCF]. There were no conditions attached to the delivery and it was effective." The court also concluded that "First American acted properly in recording the [Full Reconveyance]" and "did not breach its duty to VT Holdings." In further support of these conclusions, the court explained the witnesses for RCF and First American were more credible than Moak because they had a "greater understanding of the transactions at hand" and "[t]heir testimony was more precise and backed up by the documents." In contrast, Moak "was vague and [e]lusive" and the court "considered [his] conviction of a crime involving moral turpitude which hamper[ed] his credibility."

¶16 VT Holdings appeals.[5]

---

5. During the pendency of this appeal, RCF filed a motion suggesting that "any issues on appeal pertaining to the disposition or ownership of [the Property] . . . have become moot due to the sale of the Property to a third party," and therefore any relief this court could award is "now unavailable." We disagree. VT Holdings' appeal is not moot, because VT Holdings filed a notice of lis pendens with the district court at the outset of litigation and "record[ed] a copy of the notice filed with the court with the county recorder in [Washington County, Utah]

(continued…)

ISSUES AND STANDARDS OF REVIEW

¶17 VT Holdings raises two overarching contentions on appeal. First, VT Holdings contends the district court erroneously determined that the Full Reconveyance was effective because the parties did not agree to conduct business electronically and a faxed document does not constitute a "written document" under the relevant statute or VT Holdings' trust deed. On appeal from a bench trial, we review the findings of fact for clear error and give "due regard" to the district court's opportunity to judge the credibility of the witnesses. *See Armed Forces Ins. Exch. v. Harrison*, 2003 UT 14, ¶ 2, 70 P.3d 35 (quotation simplified). We review the district court's interpretation of VT Holdings' trust deed and the relevant statutes for correctness. *See Fisher v. Davidhizar*, 2018 UT App 153, ¶ 8 (providing the standard of review for the interpretation of a contract); *Bott v. Osburn*, 2011 UT App 139, ¶ 5, 257 P.3d 1022 ("The proper interpretation and application of a statute is a question of law which we review for correctness, affording no deference to the district court's legal conclusions." (quotation simplified)).

---

(…continued)
where . . . [the Property] is located." *See* Utah Code Ann. § 78B-6-1303(1) (LexisNexis 2018). Our supreme court has "long ago recognized the on-going potency and effectiveness of a recorded lis pendens after judgment," which gives "constructive notice of the pendency of proceedings," including a "pending appeal," "which may be derogatory to an owner's title or right to possession." *Hidden Meadows Dev. Co. v. Mills*, 590 P.2d 1244, 1247–48 (Utah 1979). The issues raised on appeal by VT Holdings are therefore not moot, and the new owners of the Property have been given "constructive notice of the pendency of proceedings which may be derogatory to [the] owner's title or right to possession" through VT Holdings' recording of the notice of lis pendens. *Id.*

¶18   Second, VT Holdings contends the district court erred in excluding Newton's expert testimony under rule 26 of the Utah Rules of Civil Procedure or, alternatively, in denying VT Holdings' request for a continuance to designate an expert witness. District courts have "broad discretion in selecting and imposing sanctions for discovery violations under rule 26," such as the exclusion of expert testimony, and we will "not interfere with such discretion unless there is either an erroneous conclusion of law or no evidentiary basis for the trial court's ruling." *Baumann v. Kroger Co.*, 2016 UT App 165, ¶ 14, 381 P.3d 1135 (quotation simplified), *aff'd in part and vacated in part on other grounds* 2017 UT 80, 416 P.3d 512. Similarly, the district court "has substantial discretion in deciding whether to grant continuances and will not be reversed on appeal unless it has abused that discretion by acting unreasonably." *Hill v. Dickerson*, 839 P.2d 309, 311 (Utah Ct. App. 1992) (quotation simplified). But we review the district court's interpretation of a rule of civil procedure for correctness.[6] *Harris v. IES Assocs., Inc.*, 2003 UT App 112, ¶ 25, 69 P.3d 297.

ANALYSIS

I. The Full Reconveyance Was Effective

¶19   None of the parties dispute that First American was permitted to reconvey VT Holdings' trust deed "only upon [First American's] receipt of a written request for reconveyance," pursuant to Utah Code section 57-1-33.1 and the provisions of VT Holdings' trust deed. *See* Utah Code Ann. § 57-1-33.1 (LexisNexis 2010). However, section 57-1-33.1 does not expressly require an original copy of the "written request." *See generally id.* Under the Uniform Electronic Transactions Act (UETA), "[i]f a

---

6. In light of our conclusion that the Full Reconveyance was effective, it is unnecessary to reach the alternative arguments raised on appeal by VT Holdings.

law requires a record to be in writing, an electronic record satisfies the law" and "[i]f a law requires a signature, an electronic signature satisfies the law." *Id.* § 46-4-201(3), (4) (2018). "A record or signature may not be denied legal effect or enforceability solely because it is in electronic form," and a "contract may not be denied legal effect or enforceability solely because an electronic record was used in its formation." *Id.* § 46-4-201(1), (2).

¶20    But the UETA applies only to parties who have "agreed to conduct transactions by electronic means." *Id.* § 46-4-105(2)(a). VT Holdings contends that none of the parties had an agreement to conduct business electronically, and therefore a fax of the Request for Reconveyance does not constitute a writing under either Utah Code section 57-1-33.1 or VT Holdings' trust deed. "Whether or not the parties agree to conduct a transaction by electronic means is determined from the context and surrounding circumstances, including the parties' conduct." *Id.* § 46-4-105(2)(b).

¶21    Here, there is sufficient evidence to support the district court's factual finding that RCF and VT Holdings had agreed to conduct business electronically. The court found that Moak accepted an email from RCF's paralegal with the Request for Reconveyance attached. Both Moak and Scott signed the Request for Reconveyance and notarized their signatures. Moak then faxed the Request for Reconveyance back to RCF without stating any conditions or otherwise informing RCF that the Request for Reconveyance was not intended to be effective. The court found that "the lack of a valid reason why everyone would go to the trouble of preparing [the Request for Reconveyance], get it signed, get it notarized, and arrange to return it [electronically], for no legal effect," is the "primary weakness" of VT Holdings' argument.

¶22    Although Moak testified at trial that the purpose of faxing the Request for Reconveyance after signing and notarizing it was to show "good faith" for further discussions about VT Holdings'

future involvement in developing the Property, the district court found Moak's testimony incredible. Because the district court has the opportunity to view the witnesses and weigh their credibility, we defer to such findings unless the record demonstrates clear error. *See American Fork City v. Thayne*, 2012 UT App 130, ¶ 4, 279 P.3d 840. Here, VT Holdings "has provided no reason for this court to depart from the deference we grant the trial court to make credibility determinations." *Id.* (quotation simplified). VT Holdings presented no evidence to support its assertion that "[s]igning an ineffective document add[ed] . . . to either the good faith of [VT Holdings] or the likelihood that a deal would be reached" between VT Holdings and RCF about VT Holdings' future involvement in developing the Property. Moreover, VT Holdings was "not in a position to start throwing out demands," because its trust deed position was "behind two prior trust deeds securing balances significantly greater than the value of [the Property]" and, therefore, "[h]ad Moak told [RCF] flat out that he would not sign the [Request for Reconveyance] until they had reached a deal," "it seems pretty clear that RCF would simply have foreclosed." Based on "the context and circumstances" of the case, there was ample evidence to support the district court's finding that VT Holdings and RCF agreed to conduct this transaction electronically. *See* Utah Code Ann. § 46-4-105(2)(b) (LexisNexis 2018).

¶23 There was also sufficient evidence in the record to support an agreement between RCF and First American to conduct business electronically. RCF emailed First American the Request for Reconveyance, and First American acted on the email by recording the Request for Reconveyance without asking for the original document. Although VT Holdings argues that First American and RCF never "exchanged a single word concerning [VT Holdings' trust deed] or the prospect of transacting any business by electronic means," the UETA does not require an express agreement. The district court properly inferred such an agreement based on "the context and

surrounding circumstances, including the parties' conduct." *See id.*[7]

¶24 The context of this transaction and the parties' conduct in this case provided sufficient evidence to support an agreement to conduct business electronically. *See id.* We therefore conclude the district court correctly determined that all of the relevant parties agreed to conduct business electronically. *See id.* And because there is no dispute that a request for reconveyance electronically transmitted to a title company in accordance with UETA satisfies the requirement for a written request under Utah Code section 57-1-33.1, the court correctly determined that the Full Reconveyance was properly recorded.

## II. Expert Witness

¶25 VT Holdings contends the district court erred in precluding VT Holdings from calling Newton, the expert witness designated by First American. Rule 26 of the Utah Rules of Civil Procedure provides: "If a party fails to disclose or to supplement timely a disclosure or response to discovery, that party may not use the undisclosed witness, document or material at any hearing or trial unless the failure is harmless or the party shows good cause for the failure." Utah R. Civ. P. 26(d)(4); *see also R.O.A. Gen., Inc. v. Chung Ji Dai*, 2014 UT App 124, ¶ 11, 327 P.3d 1233 (providing that a party need only show that the late disclosure was "either justified or harmless," not both (quotation simplified)). "Critically, a district court has broad discretion in selecting and imposing sanctions for discovery violations under rule 26." *Baumann v. Kroger Co.*, 2016 UT App 165, ¶ 14, 381 P.3d 1135 (quotation simplified), *aff'd in part and vacated in part on other grounds* 2017 UT 80, 416 P.3d 512.

---

7. VT Holdings also argues that the parties' conduct did not give rise to an agreement to conduct business electronically between VT Holdings and First American, but it fails to offer any explanation as to why such an agreement would be necessary.

"Appellate courts may not interfere with such discretion unless there is either an erroneous conclusion of law or no evidentiary basis" for the district court's ruling. *Id.* (quotation simplified).

¶26   VT Holdings does not argue that it had good cause for failing to designate an expert witness. Instead, it argues that this failure was harmless because "no party would have been surprised by the substance" of Newton's testimony as he submitted a report and was deposed by RCF, First American, and VT Holdings. We disagree.

¶27   First American retained Newton to rebut RCF's expert's testimony that the Rescission was improper. After First American and RCF settled their cross-claims, this testimony was no longer relevant. VT Holdings never designated Newton as an expert witness, nor did it disclose that Newton would opine on the propriety of the Full Reconveyance. Because VT Holdings never disclosed that it would offer expert testimony on whether the Request for Reconveyance was effective, neither RCF nor First American were on notice that it would need to rebut such expert testimony. *See Roundy v. Staley*, 1999 UT App 229, ¶ 11, 984 P.2d 404 (explaining that "the purpose of Utah's discovery rules" is to "facilitate[e] fair trials with full disclosure of all relevant testimony and evidence"). To the contrary, RCF and First American "relied on this lack of an expert disclosure when conducting discovery, engaging in settlement negotiations, and conducting their litigation and trial preparation." As a result, VT Holdings' failure to designate an expert witness was not harmless and the district court acted within its discretion in excluding the witness.

¶28   Similarly, we disagree with VT Holdings' assertion that the court erred in denying VT Holdings' request for a continuance to designate an expert witness. "The granting of a continuance rests in the sound discretion of the trial court. The judge's action in denying a continuance will not be reversed on appeal unless the court has abused that discretion by acting unreasonably." *Hardy v. Hardy*, 776 P.2d 917, 925–26 (Utah Ct.

App. 1989) (quotation simplified). Here, VT Holdings' "request for a continuance was solely due to [its] own failure to retain and designate" an expert witness by the close of expert discovery and mere weeks before trial. *See Hill v. Dickerson*, 839 P.2d 309, 311 (Utah Ct. App. 1992) (explaining that the appellant's "second request for a continuance was solely due to her own failure to retain and designate a new expert witness in a timely manner" and concluding that the district court did not exceed its discretion when it denied that request). The district court exercised sound discretion when it denied VT Holdings' untimely request for a continuance to designate an expert witness that could have been designated prior to the close of expert discovery.

## CONCLUSION

¶29    We conclude the district court did not err in determining that the Full Reconveyance was effective and properly recorded because the parties had agreed to conduct business electronically. In addition, the court acted within its discretion in excluding Newton's expert testimony and denying VT Holdings' request for a continuance. Accordingly, we affirm.

———————