**2019 UT App 84**

# THE UTAH COURT OF APPEALS

GORDON WILLIS AND JEFFREY DARBY,
Appellees,
*v.*
ADAMS AND SMITH INC., MORGAN HUMPHRIES,
JAMES L. SMITH, AND DAWN SMITH,
Appellants.

Opinion
No. 20170626-CA
Filed May 16, 2019

Fourth District Court, Provo Department
The Honorable Kraig Powell
No. 150401341

Rodney R. Parker, Danica N. Cepernich, and Adam
M. Pace, Attorneys for Appellants

Robert L. Jeffs, Attorney for Appellees

JUDGE DIANA HAGEN authored this Opinion, in which
JUDGES GREGORY K. ORME and RYAN M. HARRIS concurred.

HAGEN, Judge:

¶1     Adams and Smith Inc., Morgan Humphries, James L.
Smith, and Dawn Smith (collectively, the company) appeal
the district court's entry of judgment in favor of Gordon
Willis and Jeffrey Darby. After resigning from employment
with the company on January 20, 2015, Willis and Darby filed
a complaint in the district court demanding that the company
purchase their stock in accordance with the company's
Restrictive Stock Agreement (the stock agreement). The parties
moved for summary judgment on the issue of which of

two audited financial statements should provide the book value[1] of the company upon which the purchase price for the stock should be based. Interpreting the plain language of the stock agreement, the district court agreed with Willis and Darby and determined that the purchase price should be based on the company's book value as reflected in the audited financial statement for the 2013 calendar year, which was completed on April 15, 2014.

¶2    At trial, Willis testified to the value of the company's equipment as a non-retained expert witness. The company objected, arguing that Willis and Darby had not complied with rule 26(a)(4)(E) of the Utah Rules of Civil Procedure in disclosing Willis as a non-retained expert witness. The district court disagreed and ruled that Willis had been sufficiently designated and that his testimony was therefore admissible. The parties also disputed what equipment should be included when adjusting the purchase price based on the "fair market value of any equipment" as provided in the stock agreement. At the conclusion of trial, the district court interpreted this provision to refer to all equipment the company owned "that would stand alone and be able to be used to perform work."

¶3    The company argues that the district court erred in making these three determinations. Because the district court correctly interpreted the contract terms as a matter of law and acted within its discretion in admitting Willis's expert testimony, we affirm.

---

1. "Book value" is "the net asset value of a company calculated as total assets minus intangible assets (patents, goodwill) and liabilities." *Book Value*, Investopedia (May 6, 2019), https://www.investopedia.com/terms/b/bookvalue.asp [https://perma.cc/YRN6-P9N8].

BACKGROUND

¶4    The plaintiffs, Willis and Darby, began working for the company in the early 1990s. The company initially hired Willis to work as a field engineer, but he rose through the ranks and later became vice president of operations and a shareholder. Between 2008 and 2009, Willis served as a director on the company's board of directors and as the company's president. In those roles, he became more involved with the company's accounting practices. According to Willis, the company's annual financial statements were prepared on a calendar-year basis and the final audited statements would be available "in March or April of the following year." Willis was also involved with purchasing equipment for the company and performing the valuation of that equipment in connection with the buyout of another shareholder.

¶5    The company hired Darby to work as a project engineer. He became a shareholder in 2000, and from that time until he resigned, Darby worked as vice president of engineering and served on the board of directors.

¶6    In 2009, Willis, Darby, other shareholders and the company's trustees entered into the stock agreement. Among other things, the stock agreement provides:

> Upon the termination of employment . . . of a Shareholder, all shares of the Stock of [the company] owned by the terminated Shareholder shall be sold to [the company] and/or the other Shareholders and [the company] and/or the other Shareholders shall purchase the Stock at the price and upon the terms set forth in Sections 6 and 7.

Section 7, the provision at issue on appeal, provides that the purchase price for each share of stock in the company

shall be the per share adjusted book value . . . as of the last audited financial statement of [the company] preceding the event requiring the determination of the purchase price . . . . Book value shall be determined from the audited financial statement of [the company] according to the accounting practices previously utilized by the regular accountant of [the company] who customarily prepares [the company's] financial statement. Adjustment to the book value shall be made by taking into account the fair market value of any equipment with fair value in excess of ten thousand dollars ($10,000).

¶7     On January 20, 2015, Willis and Darby resigned from the company. At the time, they believed that one of the shareholders, James Smith, was going to retire in early 2015 and, after discussing "the financial issues of what would happen when [Smith] retired," Willis and Darby decided they did "not want[] to work there if the other didn't work there."

¶8     After Willis and Darby resigned, they demanded that the company purchase their stock in accordance with the stock agreement. In response, the company offered to purchase their stock for a price based on the company's "audited December 31, 2014 financial statements," which had been completed in March 2015 (the 2014 financial statement). Due to a loss contingency, the 2014 financial statement showed a substantial reduction in book value from the prior year. Willis and Darby objected to the use of the 2014 financial statement under section 7 of the stock agreement, which required that the value of their shares be calculated based on "the last audited financial statement." Because the audit of the 2014 financial statement had not been completed prior to their retirement date, they asserted that the audited financial statement for 2013, which had been completed on April 15, 2014 (the 2013 financial statement), was the "last

audited financial statement" on which the value of their shares must be based. They filed a complaint with the district court, alleging that the company had failed to comply with the stock agreement and requesting, among other things, that the district court make "a determination of the purchase price" of their shares and enter a judgment in the amount of that purchase price.

¶9 In their rule 26 initial disclosures, Willis and Darby named themselves as individuals "who [were] likely to have discoverable information and who [were] likely to be called in [their] case in chief." The disclosures stated that Willis and Darby had "information regarding the accounting practices of [the company], the valuation of equipment, prior purchases of minority shareholders' interest, and discussions of the parties." Willis and Darby also attached an equipment valuation Willis had prepared and the supporting documents on which he had relied. In its first set of interrogatories after receiving this information, the company asked Willis to "explain in detail how you calculated . . . the fair market value of equipment in the computation of damages that you included with your initial disclosures" and to "identify all documents that support[]" that calculation. Willis individually responded to the first set of interrogatories, explaining his method of equipment valuation.

¶10 Before trial, Willis and Darby moved for partial summary judgment, arguing that the purchase price of their stock "must be determined using the audited financial statements for the year 2013" in accordance with the plain language of the stock agreement. In response, the company filed a cross-motion for partial summary judgment, arguing that the language in section 7 reflects "an ambiguity regarding the parties' intent" as to whether the 2014 or 2013 financial statements should be used to calculate the stock price and that "extrinsic evidence confirms that the parties intended for the stock price to be calculated based on the 2014 audit."

¶11 After argument, the district court granted partial summary judgment in favor of Willis and Darby. In support of its summary judgment order, the court held:

> The provisions of the [stock agreement] providing that the purchase price of [Willis's and Darby's] stock "shall be determined as of the last audited financial statement of [the company] preceding the event requiring the determination of the purchase price" are not ambiguous. The . . . phrase "last audited financial statement" uses the term "audited," a term of art in accounting meaning that the audit is completed—not commenced or in progress.

Because the audit of the 2014 financial statement was not complete by the time Willis and Darby resigned, the court granted partial summary judgment in their favor, concluding that section 7 required the use of the 2013 financial statement, the audit of which had been completed on April 15, 2014.

¶12 The case proceeded to trial on the remaining two issues, one of which was the interpretation of "the provision in [the stock agreement] that also provides that there is an adjustment to the purchase price for equipment." Regarding this issue, Willis and Darby argued that the provision unambiguously refers to all equipment with a value over $10,000 owned by the company. Willis testified at trial that, as president of the company, he "manage[d] day-to-day operations," including "acquiring and valuing the equipment" the company owned, and he had "handled the determination of the equipment valuation" for the company during a prior buyout of a former shareholder. In order to conduct the valuation in this case, Willis testified that he and Darby acquired both a "master equipment list" and depreciation schedules from the company's accounting department that he

had used to value the equipment at the time of their resignations. Relying on this information, Willis testified about how he valued all of the company's equipment that exceeded $10,000. To determine what equipment had a value greater than $10,000 and was therefore considered in the adjustment to the purchase price, Willis testified that he aggregated some of the pieces of equipment into groups that were purchased and operated together.

¶13 While Willis was testifying, the company objected to his testimony about equipment valuation, arguing that he could not offer expert testimony because he had not been properly disclosed as an expert under rule 26 of the Utah Rules of Civil Procedure. When the court asked whether Willis and Darby had "disclosed that [Willis] would be providing this opinion in their discovery," Willis and Darby responded that they had identified Willis as a witness and provided his "detailed valuation" and "backup documentation" for the valuation. They added that because Willis was a party, he was not a "specially retained expert" and did not need to be separately designated. The company disagreed but acknowledged that it had received Willis and Darby's initial disclosures, information appearing to present values for the company's equipment, and Willis's summary of equipment valuations. After considering the parties' arguments, the court decided to "tentatively" allow Willis to proceed with his testimony.

¶14 The company later renewed its objection. After hearing arguments from the parties, the district court ruled that Willis's testimony about the valuation of equipment was admissible. In doing so, the court determined that "when you put together [Willis and Darby's] initial disclosures and" the exhibit containing Willis's estimated equipment valuations, it could not "see how anyone could come to a conclusion other than that Mr. Willis was going to talk about valuation of [the company's equipment]."

¶15 To rebut Willis's testimony, the company offered the testimony of James Smith. Smith testified about the manner in which the company's equipment had been valued during the buyout of a former shareholder's stock. He testified that for the purchase of the prior shareholder's stock, he believed the company adjusted only the purchase price based on equipment listed in the audited financial statement and did not aggregate categories of equipment.

¶16 After closing arguments, the district court granted judgment for Willis and Darby. In support of its decision, the district court found that the stock agreement was unambiguous and it was therefore unnecessary to consider parol evidence to determine the meaning of the equipment adjustment provision. The court interpreted "equipment" to mean "a physical item that would stand alone and be able to be used to perform work." Based on this definition, the district court found that some of the aggregated items in Willis's summary list of equipment valuations should not be included in the total equipment adjustment value. But the court concluded that "the other values assessed by Mr. Willis [were] credible" and reflected "the fair market value by a preponderance of evidence." Following the trial, the district court entered detailed findings of fact and conclusions of law and determined that the company owed Willis a purchase price of $661,805.51 and Darby a purchase price of $722,555.51, not including interest, deductions, and payments that the company had already made.

¶17 The company appeals.

ISSUES AND STANDARDS OF REVIEW

¶18 The company raises three issues on appeal. The first two issues pertain to the district court's interpretation of the stock agreement. First, the company argues that the district court erred in interpreting section 7 of the stock agreement to require

reliance on the company's 2013 financial statement to determine the purchase price for Willis's and Darby's shares in the company. Next, the company argues that the district court erred in interpreting section 7 of the stock agreement to refer to "all equipment owned by the company" and "to aggregated groups of individual pieces of equipment." "Interpretation of the terms of a contract is a question of law. Thus, we accord the trial court's legal conclusions regarding the contract no deference and review them for correctness." *Nova Cas. Co. v. Able Constr., Inc.*, 1999 UT 69, ¶ 6, 983 P.2d 575. On the other hand, we accept the district court's factual findings following a bench trial absent clear error. *VT Holdings LLC v. My Investing Place LLC*, 2019 UT App 37, ¶ 17. Such findings "will be sustained on appeal unless the appellant demonstrates that they are so lacking in support as to be against the clear weight of the evidence." *Sauer v. Sauer*, 2017 UT App 114, ¶ 14, 400 P.3d 1204 (quotation simplified).

¶19    Finally, the company argues that the district court erroneously determined that Willis and Darby's pretrial disclosure of Willis as a non-retained expert who could testify about equipment valuation was sufficient under rule 26 of the Utah Rules of Civil Procedure. "While interpretations of the Utah Rules of Civil Procedure are questions of law reviewed for correctness, we grant district courts a great deal of deference in matters of discovery and review discovery orders for abuse of discretion." *RJW Media Inc. v. Heath*, 2017 UT App 34, ¶ 18, 392 P.3d 956 (quotation simplified).

ANALYSIS

I. Interpretation of the Stock Agreement

¶20    The first two issues on appeal concern the interpretation of section 7 of the stock agreement. We interpret contracts with the goal of ascertaining "the intentions of the parties to the contract." *Green River Canal Co. v. Thayn*, 2003 UT 50, ¶ 17, 84

P.3d 1134 (quotation simplified). "In interpreting a contract, we look to the writing itself to ascertain the parties' intentions, and we consider each contract provision in relation to all of the others, with a view toward giving effect to all and ignoring none." *WebBank v. American Gen. Annuity Service Corp.*, 2002 UT 88, ¶ 18, 54 P.3d 1139 (quotation simplified). If the language in the writing itself is unambiguous, "the parties' intentions are determined from the plain meaning of the contractual language, and the contract may be interpreted as a matter of law." *Central Florida Invs., Inc. v. Parkwest Assocs.*, 2002 UT 3, ¶ 12, 40 P.3d 599; *see also Brady v. Park*, 2019 UT 16, ¶ 53 (explaining that we need not look to "extrinsic evidence of the parties' intent" to interpret a contract where "the contract as a whole unambiguously supports one interpretation over the other").

¶21 Section 7 of the stock agreement provides that the purchase price for each share of stock in the company

> shall be the per share adjusted book value . . . as of the *last audited financial statement* of [the company] preceding the event requiring the determination of the purchase price . . . . Book value shall be determined from the audited financial statement of [the company] according to the accounting practices previously utilized by the regular accountant of [the company] who customarily prepares [the company's] financial statement. Adjustment to the book value shall be made by taking into account the fair market value of *any equipment* with fair value in excess of ten thousand dollars ($10,000).

(Emphasis added.) The company argues that the district court misinterpreted the meaning of the terms "last audited financial statement" and "any equipment" in arriving at the purchase price for Willis's and Darby's shares. We address each argument

in turn and affirm the district court's interpretation of both terms.

A.     "Last Audited Financial Statement"

¶22    The company first argues that the district court erred in determining that the phrase "last audited financial statement" "was a reference to the last *completed* audited financial statement" and not to a financial statement that was still under audit at the time of Willis's and Darby's resignations. Put another way, the company argues that the district court incorrectly determined that the purchase price should be based on the 2013 financial statement, which was completed on April 15, 2014, and not the 2014 financial statement, which was completed on March 18, 2015—after Willis and Darby resigned.

¶23    Under section 7 of the stock agreement, shareholders who resign from the company are entitled to sell their shares back to the company for a purchase price equal to "the per share adjusted book value . . . as of the last audited financial statement of [the company] preceding the event requiring the determination of the purchase price." We agree with the district court that the plain language of this provision unambiguously refers to the 2013 financial statement because it was the most recent financial statement for which an audit had been completed prior to the date of Willis's and Darby's resignations.

¶24    The company argues that the term "audited" is not a past tense verb, but an adjective that refers to a financial statement that has been reviewed to ensure accuracy.[2] Under this

_____

2. The company also argues that the provision stating that the "[b]ook value shall be determined from the audited financial statement of [the company] according to the accounting practices previously utilized by the regular accountant of [the company] who customarily prepares [the company's] financial statement"

(continued…)

interpretation, the company argues that section 7 refers to the most recent "financial statement" for the company at the time of the triggering event, regardless of whether that financial statement was audited before or after the triggering event. But "proper contract interpretation includes application of ordinary rules of grammar," and the company's interpretation becomes untenable when considering "the language, grammatical structure, and punctuation" of the entire phrase. *See Encon Utah, LLC v. Fluor Ames Kraemer, LLC*, 2009 UT 7, ¶ 37, 210 P.3d 263. The absence of a comma or "and" between "last" and "audited" signals that they are not coordinated adjectives modifying the same noun. *Chicago Manual of Style* §§ 5.91, 6.36 (17th ed. 2017); *see also Primary Children's Hosp. v. Utah Dep't of Health*, 1999 UT App 348, ¶16 n.3, 993 P.2d 882 ("Rules of grammar provide that when there is a comma between two coordinate adjectives preceding a noun, each of those adjectives modifies the noun itself." (quotation simplified)). Instead, the syntax indicates that the adjective "audited" modifies the noun (or, more precisely, the adjective-noun pair) "financial statement" and the adjective "last" "modifies the idea expressed by the combination of the first adjective and the noun." *See Chicago Manual of Style* § 5.91. In other words, "audited financial statement" is an adjective-

---

(…continued)

unambiguously requires the purchase price to be based upon the 2014 financial statement. We disagree that this provision is relevant to our determination of which audited financial statement should be used. Rather, this sentence simply prescribes that the book value, for purposes of determining the purchase price, "shall be" the same book value reflected in the last audited financial statement and not some other value obtained from another accounting source. The parties do not dispute that both audited financial statements complied with the accounting practices previously utilized by the company's accountant.

noun unit and the adjective "last" modifies the entire unit. *See id.* § 6.36

¶25 When the phrase "the last audited financial statement preceding the event requiring the determination of the purchase price" is read as a whole, the plain meaning indicates that the "financial statement" must be the "last" one "audited" before the triggering event. We cannot, as the company wishes, read this provision to refer to the "financial statement" that was for the "last" calendar year even though it was "audited" at some indeterminate time after the triggering event. The syntax used by the parties does not permit such an interpretation.

¶26 The parties do not dispute that "the event requiring the determination of the purchase price" is Willis's and Darby's resignations on January 20, 2015. Because the 2014 financial statement had not yet been audited by that date, the 2013 financial statement was the "last audited financial statement" within the meaning of section 7. As a result, the district court properly granted partial summary judgment in favor of Willis and Darby on this issue.

B.     "Any Equipment"

¶27 The company also argues that the district court erred in determining that the term "any equipment" "unambiguously refers to all equipment of the company" and in aggregating categories of equipment to determine whether the equipment value exceeded $10,000. Instead, the company asserts that "any equipment" exclusively and unambiguously refers to individual pieces of equipment listed in the audited financial statement.

¶28 The stock agreement provides that "[a]djustment to the book value shall be made by taking into account the fair market value of any equipment with fair value in excess of ten thousand dollars ($10,000)." Interpreting this provision, the district court first determined that the language was unambiguous and that

the phrase "any equipment" did not refer exclusively to equipment listed in the company's financial statement. When contract language is unambiguous, "a court determines the parties' intentions from the plain meaning of the contractual language as a matter of law." *Bakowski v. Mountain States Steel, Inc.*, 2002 UT 62, ¶ 16, 52 P.3d 1179. Here, the phrase "any equipment" is unqualified; no term in the stock agreement limited "any equipment" in any way and specifically did not limit it to only those pieces of equipment the company listed in its audited financial statement. The district court thus correctly determined that the equipment valuation could include all the equipment the company owned, subject to the other terms of the provision.

¶29 The company also argues that the district court "improperly allowed [Willis and Darby] to aggregate equipment in order to meet the $10,000 threshold." To the contrary, the district court rejected six items included in Willis's calculations, finding that those items were "pieces of equipment that are aggregated, and should be deleted from the list." Instead, the district court included only equipment that "would stand alone and be able to be used to perform work." Given that the district court's interpretation of "equipment" is—at least on this point—consistent with that advanced by the company, the company's grievance on appeal is not with the court's interpretation of the contract but with its application of the contract's terms to the specific facts of the case.

¶30 The district court's determination as to what constitutes a stand-alone unit of equipment is a factual finding to which we afford substantial deference. *See In re United Effort Plan Trust*, 2013 UT 5, ¶ 17, 296 P.3d 742 (reiterating that "factual determinations are entitled to the most deference" on appeal (quotation simplified)). To overcome this deference, the company must show that the district court's finding was clearly erroneous. *See In re adoption of Baby B.*, 2012 UT 35, ¶ 40, 308 P.3d

382. To carry its burden of persuasion, the company "must marshal all relevant evidence presented at trial which tends to support the findings and demonstrate why the findings are clearly erroneous." *See Grimm v. DxNA LLC*, 2018 UT App 115, ¶ 15, 427 P.3d 571 (quotation simplified).

¶31     The company has not pointed to any evidence in the record to suggest that the district court improperly aggregated individual items of equipment. Its argument in this regard is limited to its reply brief, in which it contends that item 10 on the equipment valuation spreadsheet "was a pile of brackets, not a piece of equipment," and that "this was also the case with items 2, 10, 11, 27–31, and 44–47." The company ignores the evidence supporting the district court's treatment of these items as a single unit, including the testimony from Willis describing how these items were purchased and used collectively. Because the company has not demonstrated that the court's findings are against the clear weight of the evidence, we affirm the district court's factual findings as to what equipment constitutes a single unit with a value of more than $10,000 for purposes of applying the book value adjustment provision.

## II. Willis's Expert Testimony

¶32     Finally, the company argues that the district court's admission of Willis's expert opinion testimony as to the valuation of equipment was erroneous because Willis had not been properly disclosed as a non-retained expert under rule 26(a)(4) of the Utah Rules of Civil Procedure. Rule 26 requires a party intending to present expert testimony from "any person other than an expert witness who is retained or specially employed to provide testimony in the case or a person whose duties as an employee of the party regularly involve giving expert testimony" to provide other parties with "a written summary of the facts and opinions to which the witness is expected to testify." Utah R. Civ. P. 26(a)(4)(E). "If a party fails to

disclose or to supplement timely a disclosure . . . , that party may not use the undisclosed witness . . . at any hearing or trial unless the failure is harmless or the party shows good cause for the failure." *Id.* R. 26(d)(4).

¶33 In adopting this rule, the advisory committee noted that "[t]here are a number of difficulties inherent in disclosing expert testimony that may be offered from fact witnesses." *Id.* R. 26 advisory committee notes. Consequently, rule 26(a)(4)(E) is "not intended to elevate form over substance—all [it] require[s] is that a party fairly inform its opponent that opinion testimony may be offered from a particular witness." *Id.* To fairly inform another party that a non-retained witness may offer expert testimony, the party offering the testimony must do more than "mere[ly] mention that opinion may be offered" by that witness. *RJW Media Inc. v. Heath*, 2017 UT App 34, ¶ 24, 392 P.3d 956. Rather, a party must provide adequate notice of the witness and the testimony to be given, which requires "that such witnesses be identified and [that] the information about their anticipated testimony . . . include any opinion testimony that a party expects to elicit from them at trial." *Id.* (quotation simplified).

¶34 Here, Willis and Darby do not dispute that Willis was subject to the requirements of rule 26(a)(4)(E), but they insist they complied. To comply with the rule, Willis and Darby made three different types of disclosures that gave the company notice of the expert opinion testimony Willis would offer as to the valuation of the company's equipment. First, Willis and Darby stated in their Rule 26 Initial Disclosures that Willis had "information regarding the accounting practices of [the company], the valuation of equipment, prior purchases of minority shareholders interest[s], and discussions of the parties." Second, Willis and Darby attached a summary of Willis's valuation of the equipment as well as documentation of the sources on which Willis based his valuation. Finally, in Willis's answers to the company's first set of interrogatories, Willis

responded to the company's request that he "explain in detail how [he] calculated the . . . fair market value of equipment in the computation of damages that [he] included with [his] initial disclosures." Willis responded:

> Fair market value was calculated by identifying the value of the equipment from various sellers in May 2014. In many cases several prices were obtained from several sources and averaged to determine the fair market value. We used an old master equipment list to identify the equipment subject to the valuation because [the company] has failed to provide us a Master Equipment list as of the date of my termination despite our repeated requests.

¶35 Having received Willis and Darby's initial disclosures as well as Willis's summary of valuations, supporting documentation, and answers to interrogatories, the company was on notice regarding the expert opinions that would be offered and the identity of the expert witness. Nevertheless, the company maintains that it did not have notice of either fact. It argues that the district court's admission of Willis's expert testimony does not comply with this court's characterization of rule 26(a)(4)(E)'s requirements in *RJW Media* where we concluded that the non-retained expert disclosures were deficient. *Id.* ¶ 26. However, in *RJW Media*, we addressed a circumstance where the party seeking to admit the opinion testimony of a non-retained witness had not made *any* disclosures relating to expert testimony. In that case, the party seeking to admit the testimony, disclosed "no facts or opinions . . . whatsoever." *Id.* Instead, that party only provided "a list of general topics about which [the non-retained expert witness], along with nine other witnesses, might testify." *Id.* That is not the case here. Rather than merely stating that Willis would provide testimony on "equipment valuation," Willis and Darby provided a summary of what Willis's opinion would be and

ample documentation supporting that valuation. Willis further described the manner in which the valuation was performed in his answer to the company's interrogatories. From these documents, the company had notice of the opinion testimony Willis would provide and the basis for that opinion.

¶36    The company further argues that Willis and Darby identified Willis as a fact witness only and never disclosed that he would be offering expert opinions. "This court has consistently held that disclosing a witness as a fact witness, by itself, is insufficient to allow that witness to also present expert testimony." *Ghidotti v. Waldron*, 2019 UT App 67, ¶ 14. For instance, in *Ghidotti*, the district court granted summary judgment for the defendants because the plaintiffs could not prove damages with the requisite degree of certainty without an expert witness. *Id.* ¶ 7. One of the plaintiffs sought to offer her own expert opinion regarding lost profits, but the district court excluded that testimony because the plaintiff had never been disclosed as a non-retained expert. *Id.* Although she had been identified as a fact witness and the plaintiffs' supplemental disclosures had contained a damages calculation, "[n]either [plaintiff] was identified as an individual who would testify about damages." *Id.* ¶¶ 5–6. Moreover, the district court found that the late disclosure "would be harmful because the time set for trial was approaching and none of the defendants had retained experts in reliance on the [plaintiffs] not disclosing any expert witnesses." *Id.* ¶ 18.

¶37    In contrast, the initial disclosures in this case specifically identified Willis as a witness who would testify about "valuation of equipment." The district court determined that this disclosure, together with the attached exhibit containing the fair market value calculation, was sufficient to designate Willis as a non-retained expert witness. Moreover, unlike in *Ghidotti*, any deficiency in the disclosure was harmless in the context of this case. Before his resignation, Willis was a long-time employee,

shareholder, and member of the board of directors for the company—a closely held corporation. The company was aware that Willis had expertise in equipment valuation because he had previously performed the equipment valuation for the buyout of a former shareholder. Additionally, the company was aware that Willis and Darby bore the burden of offering evidence to prove the value of their shares and had not designated any other expert. The district court specifically found that the company was not surprised by Willis's testimony and had the opportunity to effectively cross-examine him. Under these circumstances, the district court acted within its discretion in allowing Willis to testify as a non-retained expert on the issue of damages.

CONCLUSION

¶38   The district court did not err in interpreting the stock agreement's "last audited financial statement" term as unambiguously referring to the company's 2013 financial statement. Nor did the district court err in determining that the term "any equipment" unambiguously referred to every piece of the company's equipment capable of standing alone to perform work and in applying those terms to the specific facts of this case. Finally, the district court did not err in concluding that Willis and Darby adequately designated Willis as a non-retained expert in compliance with rule 26(a)(4)(E). Accordingly, we affirm.

——————